No. 20679.

Carolyn Elizabeth Bell v. Allen Bell.
(400 P.2d 440)

Decided March 29, 1965.

DICKERSON, MORRISSEY & DWYER, for plaintiff in error.

GRAHAM SUSMAN, HYMAN D. LANDY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

This writ of error presents the second chapter in the rather protracted litigation stemming from the divorce of Carolyn and Allen Bell. See *Bell v. Bell*, 150 Colo.

174, 371 P.2d 773, where the matter was considered by us for the first time.

Carolyn and Allen were married in 1947 and in 1960 Allen was granted a non-contested decree of divorce from Carolyn. In the decree the trial court reserved for future determination matters concerning division of property, attorneys' fees, and the like. In due time hearing was held regarding a division of the property belonging to the parties and in connection therewith the trial court entered the following order:

1. The residence at 304 Ivanhoe St., Denver, formerly occupied by the parties, together with all furniture and household goods located therein, was awarded Carolyn;

2. real estate commonly described as 2415 Champa Street, Denver, and other realty located at 2425-2427 Champa Street was also awarded Carolyn;

3. an encumbrance in the amount of $27,000 on the Ivanhoe property and another encumbrance in the amount of $23,100 on the aforementioned Champa Street properties were to be paid by Allen within 6 months;

4. real estate commonly described as 2403 Champa Street, in Denver, was awarded Allen;

5. the business known as Bell Publications, as well as another known as the Golden Bell Press, were awarded Allen; and

6. the real estate commonly described as 2400 Curtis Street, Denver, where Allen conducted his business operations, was also awarded Allen.

Being dissatisfied with this division of their property, Allen by writ of error sought and obtained a review thereof. See, *Bell v. Bell, supra,* where we held that this division of property was in fact "manifestly unfair, inequitable and unconscionable, and amounts to such an abuse of discretion on the part of the trial court that it must be vacated and set aside."

Thereafter a second hearing relating to a division of property was held. After much testimony the trial court

entered a very detailed order which, in essence, divided the property in the following manner:

1. the residence at 304 Ivanhoe Street was awarded Carolyn, with the direction that she, not Allen, should pay a $7,000 encumbrance thereon, with Allen directed to pay a second encumbrance thereon in the amount of $20,000; and

2. all of the remaining property of the parties, i.e. the 3 parcels of realty on Champa Street plus the Bell Publications and the Golden Bell Press plus the realty at 2400 Curtis Street was awarded Allen.

By the present writ of error, Carolyn, being dissatisfied with this division of their property, now seeks a reversal of this judgment, and as ground therefor contends — as did Allen in the prior proceeding — that the order is "manifestly unfair, inequitable and unconscionable" and should not be permitted to stand. We agree with Carolyn's appraisal of the division of property as made on the second hearing of this matter. Accordingly we must reverse this judgment and remand the cause for a third and, what we optimistically hope will be, a last hearing in connection therewith.

There is little dispute as to the general law which governs this controversy. 1960 Perm. Supp., C.R.S., section 46-1-5 (2) declares that "the court may make such orders, if any, as the circumstances of the case warrant relative to division of property, *in such proportion as may be fair and equitable.*" (Emphasis supplied.) The matter of division of property between divorced parties is traditionally a matter which lies within the sound discretion of the trial court, and in the absence of a clear showing of an abuse of this discretion this Court, on review, will not set aside or vacate the findings of the trial court. A finding that a party to a marriage was at fault will not, of itself, bar an equitable division of property. It is only one of the elements to be taken into consideration, and in the absence of moral delinquency or a complete disregard of the marriage

vows individual fault should not act as an obstacle to an equitable division of property. Nor is it a prerequisite to an equitable division of property that the wife show that she had contributed by funds or efforts to the original acquisition of the specific property awarded to her. See, *Bell v. Bell, supra; Shapiro v. Shapiro,* 115 Colo. 505, 176 P.2d 363; *Reap v. Reap,* 142 Colo. 354, 350 P.2d 1063; *Walden v. Walden,* 147 Colo. 221, 363 P.2d 168; and *Liggett v. Liggett,* 152 Colo. 110, 380 P.2d 673.

Some very limited background information regarding the parties, in addition to that already set forth in *Bell v. Bell, supra,* is deemed advisable to an adequate understanding of our definite conclusion that this is an instance where the trial court abused its discretion. Allen and Carolyn first met in 1945, Allen then being about 30 years of age and in business for himself in Denver and Carolyn being 17 and a high school student. Very shortly thereafter Carolyn, while still in high school, went to work for Allen on a part-time basis and upon her graduation from high school in June 1946, she became employed by Allen on a full-time basis. The two were married in June 1947, thereafter separated and reconciled in 1956, and finally separated and were then divorced in 1960. For virtually the entire period of this marriage, save and except when she was enceinte on two occasions, Carolyn worked as a bookkeeper and secretary for her husband in the business known as Bell Publications. Some of this work was admittedly only part-time, as she also had duties in the Bell household. During this period of employment Carolyn was paid a salary which was ultimately used for family expenses, as well as for Carolyn's use.

The trial court found that as of 1960 the Bells "net worth" was $145,000. It is Carolyn's basic position that of this $145,000 she was only awarded a $10,000 equity in the family residence. This residence, together with the furnishings, was valued at about $40,000, but was subject to two encumbrances, one for $20,000 which the

trial court ordered Allen to pay, and the second encumbrance for $7,000, which the trial court felt Carolyn or, as shall be referred to below, preferably her new husband should pay. Both of these encumbrances were said to be in default, hence Carolyn's conclusion that all the trial court awarded her was a "$10,000 equity" in the family home.

Allen's position is that the several findings and conclusions of the trial court are eminently correct and that the judgment should be affirmed. The gist of the reasoning of the trial court appears to be as follows: in 1960 the net worth of the Bells was $145,000; Carolyn brought nothing of any monetary value into the marriage; contrarily, Allen brought $75,000 into their marriage, his net worth in 1947 being "not less than $75,000"; the appreciation in the "net worth" of the Bell family from 1947 to 1960 was therefore $70,000; Carolyn was awarded a $33,000 equity in their family home ($40,000 less the $7,000 encumbrance she, or her new husband, was to pay), and this $33,000 figure is almost one-half of $70,000; and in any event Carolyn was awarded $33,000 *more* than she brought into the marriage.

Carolyn contends that the trial court in its several findings generally tended to undervalue the net worth of the Bell family as of 1960 and, though conceding that she had virtually nothing but her personal effects at the time of their marriage, she very strongly argues that there is no competent evidence to support the trial court's finding that Allen possessed any "net worth" in 1947 of $75,000. In this latter regard, let us examine the record.

Just prior to his marriage Allen cashed some $15,000 in U.S. Bonds and used the proceeds therefrom, together with some other money which he then had available, to purchase some printing equipment for $18,500. Also, at about this same time, Allen had an "equity" in an apartment house. Allen did not express any opinion as to the value of this equity, although Carolyn valued it at about

$3,000. Several years later, when the apartment house was sold, he realized $7,000 on his interest therein.

As of 1947 Allen also held a long term lease on the business property out of which he conducted his business ventures. He did not express any opinion as to the value of this lease, though he did testify that at one time he turned down an offer of $10,000.

As has been already mentioned, as of 1947 Allen owned the Bell Publications. Neither he nor Carolyn expressed any opinion as to the value of this operation.

On this state of the record the trial court held that Allen at the time he married Carolyn had a net worth of not less than $75,000. In arriving at this figure the trial court found the value of the aforementioned business lease to be $15,000 and, additionally, he fixed the "going concern value" of the business itself to be "somewhere between $35,000 and $40,000." This "going concern value" was independent of the printing equipment previously referred to as having been purchased at the time of the marriage. In our view there is no competent evidence in the record which in anywise supports the finding that the business lease had a value of $15,000 or that the "going concern value" of the Bell Publications was somewhere between "$35,000 and $40,000." For all practical purposes there is absolutely *no* evidence as to the value of the lease as of the date of marriage. With reference to the value of the business, the trial court stated that in determining the "going concern value" of the business to be $35,000 to $40,000, as of 1947, it had used Allen's income tax returns for the years 1953 to 1959, his returns from 1947 to 1953 apparently being unavailable. Just how the tax returns for the years of 1953 through 1959 aided the court in determining the value of the business as of June 1947 is unclear. In any event, it is quite evident that there is insufficient evidence to support the trial court's finding that the business lease was worth $15,000 or that the business itself was worth somewhere between $35,000 and $40,000. Hence, there is

no evidence to support the further finding that Allen's net worth as of 1947 was $75,000, as the trial court's calculations were in error from the very start, and substantially so.

■■ There are also other errors appearing in the record of which we take note. The fact that shortly after the divorce Carolyn's marriage apparently nettled not only Allen, but the court as well. In determining that Carolyn should pay the $7,000 encumbrance on the Ivanhoe property, the trial court observed that this would give Carolyn's "new husband an opportunity to pay some rent for the luxury with which he became endowed." Need we observe that the "new husband" is not a party to this proceeding! Nor should an order which is directed against Carolyn be based on any *supposed* duty or obligation of her "new husband."

■ Also, the trial court "reluctantly" fixed Carolyn's attorneys' fee at $5,000. In this regard although it recognized that this was Allen's obligation, the trial court on its own initiative ordered that the fee should come from such monies, if any, as might be subsequently determined to be due and owing Allen from Carolyn for the rents from those properties which were awarded to Carolyn in the first hearing and which she retained until the time of our earlier decision. This was erroneous, as Allen's obligation in this regard is not dependent upon any accounting to him by Carolyn.

The foregoing is illustrative, though not definitive, of the instances wherein the trial court abused its discretion and made findings which are without support in the record before us. Accordingly, we must reverse the judgment and remand the cause to the trial court for a third consideration of the matter pertaining to the division between the parties of their property and also of the reasonable attorneys' fee to be awarded as a result of this long-drawn-out litigation.

The judgment is reversed and the cause remanded for

further proceedings consonant with the views herein expressed.

Mr. Justice Moore and Mr. Justice Day concur.