No. 22599.

JAMES A. SANTILLI *v*. MARILYN N. SANTILLI.
(453 P.2d 606)

Decided April 28, 1969.

HINDRY, ERICKSON & MEYER, W. H. ERICKSON for plaintiff in error.

HARDEN, OLSEN & NAPHEYS, RALPH B. HARDEN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

IN a final decree of divorce awarded to Marilyn N. Santilli from James A. Santilli, the court entered orders of property division, alimony and child support which the

husband challenges in this writ of error as being arbitrary and confiscatory.

I.

We will first treat the property settlement order.

The parties had been married for approximately eight years. At the time of the marriage the wife was twenty-three years old and the husband twenty-four. Mrs. Santilli had a BS degree in art and had taught school for one year. She brought into the marriage a savings account in the amount of $2000. Mr. Santilli, through inheritance, had $50,000 in securities at the time of the marriage. He enrolled in the university in Fort Collins the first year of the marriage. Mrs. Santilli taught school for a time while her husband was devoting time to his college studies. She earned a total of approximately $4200. A portion of this sum was spent to defray expenses for her study for a Master's degree. The remainder of the moneys earned by her were mingled with the family funds.

Mr. Santilli's work record during the years of the marriage was erratic. For the first three years it was virtually nil, and the family lived off the income from the husband's securities and earnings and also from the contributions from the wife's earnings mentioned above. Nevertheless, in the ensuing years the husband's securities showed an appreciation to the monetary figure of $90,000. There was some testimony — not too clear — that probably the securities had increased in value to the sum of $100,000, but that the corpus had been invaded during the years to the extent of approximately $10,000 in order to supplement the family income.

In the division of property, the court determined that the $40,000 growth in securities was family income and used that as a basis for the division of property. The wife was awarded the equity in a home which the parties purchased and which was determined to be $5820, the wife to be responsible for the payment of the encumbrance on the property of $19,680. Making an adjustment

of $3000 which the husband owed his mother when she provided the funds for the down payment on the house, the court awarded the wife $17,000 out of the securities and decreed that she could make the choice of securities from Mr. Santilli's folio to that amount.

The husband argues that because the securities were inherited property the increase in value cannot be attributed to any contribution made by the wife and cannot properly be taken into account in the division of property.

 Mr. Santilli has misconceived the law in regard to inherited property. Such property is not *per se* excluded from consideration by the court in making a determination of the property rights of the parties. This court has held that it is not a prerequisite in a property division case that the wife show she has contributed funds to or has by her efforts helped actually to acquire specific property. *Shapiro v. Shapiro*, 115 Colo. 505, 176 P.2d 363. In the case at bar the court made the following finding:

"Here we have two relatively young people who up until recently had a happy home, married life. Who went through the years of educating the defendant husband, in which the wife did her part in every respect. And for a couple of years she worked. If she hadn't worked, and she might well not have done so in view of the financial standing of the husband in this case, if she hadn't he would have been required to draw upon these moneys."

The court's determination is well supported by the record. The total income of the husband from wages and dividends from his security folio, computed from the figures made available to the court by the parties, was between $35,000 and $40,000. This averages somewhat close to $5000 per annum. For three people to subsist on this amount, which may have been augmented to the extent of another $1200 per annum by invasion of the corpus, some management and frugality on the part of the parties would be essential to prevent further

inroads into the securities. This was a joint effort since the wife was not shown to be a spendthrift.

As we view the property division, Mr. Santilli was given $73,000 in securities, and Mrs. Santilli $17,000 plus a $5000 equity in the home. If Mr. Santilli is to be given credit for bringing $50,000 into the marriage, Mrs. Santilli is entitled to receive a credit of $2000 which she brought into the marriage and which was used by the parties. Thus, if the $2000 were to be returned to her, she received only $20,000 out of the husband's property while he retained $73,000. We affirm that portion of the court decree.

A second objection to the awarding of a portion of the securities to the wife is directed to the court order empowering the wife to make the selection of the husband's stocks from the closing price as of May 6, 1966. We hold that this portion of the order was erroneous. As we view C.R.S. 1963, 46-1-5(2), the legislature has granted to *the court* powers as follows:

"At the time of the issuance of a divorce decree, * * * on application of either party, the court may make such orders, if any, as the circumstances of the case may warrant relative to division of property, in such proportions as may be fair and equitable."

We deem the division to be a function requiring the exercise of judicial discretion. We conceive dangers in the court not assuming its full function and delegating full discretion to the wife. Her selection of certain blue chip securities for their consistency in high dividend payments while at the same time maintaining a low market value, could work to an unfair advantage for her and a decided detriment to the husband's holdings.

The court entered an order for alimony and child support (which we discuss next) predicated on income to the husband from his securities. We deem it incumbent on the court therefore to determine what securities those will be so as to give the husband a potential yield for him to meet his court-ordered obligations. We note

that the court in its alimony and support order deliberately excluded from any consideration any yield that the wife might have from her securities.

## II.

Turning our attention now to the alimony and support orders, at the time of the divorce decree Mrs. Santilli was not employed. The court ordered the husband to pay her $316.10 monthly as alimony and further ordered that an additional $215 per month be paid for child support. As a further increment of that award the court ordered Mr. Santilli also to pay all necessary doctor, dental and hospital bills and drug prescriptions at any time they might be required for the child. Mr. Santilli was also ordered to establish an escrow fund in the trust department of a bank of his choosing in Fort Collins to the value of $15,000 to secure the alimony and support payments, with the proviso that he should be paid the earnings from the fund and be able to manage it in any way that he saw fit so long as he maintained that amount.

The court then provided that if Mrs. Santilli became gainfully employed, her earnings, exclusive of any return from her investments, should be deducted from the $316.10 alimony; but that in any event Mr. Santilli pay a minimum of $75 per month alimony and an additional $60 per month for child care, *i.e.*, "baby sitting expenses." It was agreed by the parties at the time of submission of this case to this court that Mrs. Santilli's employment was such as to entitle her only to the minimum payments ordered by the court.

■■ We hold that the original order of the court providing for payments to Mrs. Santilli of approximately $535 per month, plus medical expenses, was arbitrary, capricious and confiscatory. The payments were in excess of what was shown to be the average income of the family during the period of the marriage. The evidence before the court was that Mr. Santilli, who was not

employed at the time, had a potential earning capacity as an accountant of approximately $500 per month. The order would leave him for his own living expenses only the earnings from his securities which were not estimable because of the court order giving Mrs. Santilli her choice of the stocks to the extent of $17,000. Assuming a high possible yield to Mr. Santilli on $73,000 in securities, he would, after taxes, be reduced to less than $200 a month for himself. A court cannot make an award which will impoverish the husband. *See Lopez v. Lopez,* 148 Colo. 404, 366 P.2d 373; *Kane v. Kane,* 154 Colo. 440, 391 P.2d 361.

Although we note that the original order of the court is no longer in effect, nevertheless for clarity we order it modified from the date of the decree. Any arrearage accumulated is to be adjusted by the court on the basis of $215 for child support and $135 for the wife from the date of the divorce decree. Mr. Santilli is to be credited accordingly, and if judgment has been entered based on the arrearages, it is to be set aside and a new judgment entered in harmony with the adjustment above ordered. The order which remains providing for $75 a month alimony and $60 for expenses for caring for the child while the wife works we affirm as the final order of the trial court. We affirm the order for $215 for support of the child but order that the additional provision for payment of doctor, dental and hospital expenses be set aside. The possibility of those expenses is provided for in the child support order. We also affirm the order for $15,000 escrow security.

Accordingly, the judgment of the court is affirmed in part, reversed in part, and modified in part, and the cause is remanded to the trial court with directions as follows: to modify the original order for the payment of $316.10 a month alimony to $135 per month; to set aside the order giving Mrs. Santilli her choice of securities, with directions for the court to hold a hearing to determine the securities to be awarded to her; to vacate and

set aside the order providing for doctor, dental and hospital bills and drug prescriptions.

Mr. Chief Justice McWilliams, Mr. Justice Hodges and Mr. Justice Lee concur.