## No. 26406

**John Joseph Gaskie v. Eleanor Hugins Gaskie**
(534 P.2d 629)

Decided April 14, 1975.    Rehearing denied May 12, 1975.

Law, Nagel and Clark, P.C., Ralph M. Clark, for plaintiff-appellee.

Carrigan & Bragg, P.C., Jim R. Carrigan, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

John and Eleanor Gaskie, to whom we will also refer as husband and wife, were divorced in 1969. The Denver district court thereafter appointed a Special Master to hear issues covered generally within the concepts of alimony, child support and property settlement. C.R.C.P. 53(b). The master conducted hearings and took great volumes of evidence. He issued his findings of fact, conclusions of law and recommendations about 15 months later. The trial court adopted them virtually *in toto,* without first reading the record of the proceedings and against objections advanced by the wife.

The focus of the dispute herein is a ranch inherited by the wife about eleven years before her marriage. As part of the property settlement, the husband was awarded an amount of $75,000 — net after taxes — from the condemnation proceeds of his wife's inherited land. The wife appeals.

We reverse the trial court, and hold as a matter of law that the wife's land is not marital property subject to property division in this divorce. The husband is not entitled to a share in the ranch, the water rights appurtenant to it, or the proceeds of condemnation of the ranch land for the Chatfield Dam.

I.

Inherited property is not per se excluded from consideration by a court in marital property division. *Santilli v. Santilli,* 169 Colo. 49, 453 P.2d 606 (1969). Nor is it necessary that a spouse show he contributed capital or by his efforts actually helped to acquire specific property. *Santilli, supra; Shapiro v. Shapiro,* 115 Colo. 505, 176 P.2d 363 (1946). However he must show that by his efforts conjoined with his wife's, he either built up or kept the family worth intact. He is then entitled to the value of those efforts in a property settlement, *Santilli, supra; Kraus v. Kraus,* 159 Colo. 331, 411 P.2d 240 (1966); *Bell v. Bell,* 156 Colo. 513, 400 P.2d 440 (1965); *Kalcevic v. Kalcevic,* 156 Colo. 151, 397 P.2d 483 (1964); *Green v. Green,* 139 Colo. 551, 342 P.2d 659 (1959); *Shapiro, supra.*

■ Each case must be decided on its own facts. *Kraus, supra.* To bolster his claim, John Gaskie in his brief cites the following examples of how his joint efforts conserved or added to his wife's inherited property:

(1) He performed his legal obligation of supporting his family for 20 years, citing *Thompson v. Thompson,* 30 Colo. App. 57, 489 P.2d 1062 (1971). This included clothing, groceries, and medical bills. It also included paying his own federal and state income taxes — and paying the taxes on the ranch income once, with a "half-baked recollection" of a second time. It included paying 9% of the purchase price of a family home (Mrs. Gaskie paid the other 91%). It included paying off a $5,000 mortgage on a second house which Mrs. Gaskie's aunt had deeded to them for that amount; John Gaskie allowed the aunt to live there rent free. Finally it included paying insurance, repairs and utility costs for the two houses.

We find *Thompson* inapposite, for there the court found that *in addition to* supporting his family, the husband's labor had allowed his wife to invest a considerable percentage of her income. Thus, his efforts increased their joint property. Such a finding is conspicuously absent in this case;

(2) He assisted Mrs. Gaskie in managing the property. However, this admittedly was not "regularly," but only "occasionally." His help consisted of introducing his wife to attorneys; cleaning up after a filthy tenant; discussing boundary disputes; thwarting trespassers; planning a family home which never came to fruition; recreational visits; and checking on a cloudy title. Viewed in the spectrum of the over 20 years of complicated management which the wife performed, this was indeed "occasional" help;

(3) He and Mrs. Gaskie considered the ranch income as family money. However, the evidence showed that even though they were operating as a family, only if a "drastic" situation arose would ranch money be used to augment the family income, and then only "from time to time." The wife clearly considered the source of such emergency relief as "another kind of status" from the husband's earned income;

(4) He and Mrs. Gaskie considered the ranch as security for their later years. However, she stated that any benefit from own-

ership would accrue to her family, including *any* husband, not necessarily John Gaskie. She believed the ranch was hers alone, and ultimately would pass to her children.

Set against these contentions is the wife's evidence that the ranch was and always remained her separate property:

(1) Since reaching the age of majority, she personally managed the ranch and all dealings have been in her name alone. She did not consult her husband, who had no expertise in ranching, although she did hold desultory "conversations" with him, much as one would discuss the rising cost of food;

(2) Her intent was that the ranch remain her separate property, and it is titled to her alone. This is in contrast to their true marital property, such as automobiles, houses and bank accounts, which were jointly held;

(3) The ranch under her management showed a profit, and was never in danger of loss through mortgage foreclosure on tax sale. Thus, her husband's minimal financial contributions were never used to prevent the loss of the property;

(4) All financing was solely in her name, and with her funds, including full payment of the ranch mortgage;

(5) All proceeds from the condemnation of parts of the ranch to build the Chatfield Dam were kept by her in separate ranch accounts. The husband was never allowed to withdraw from the accounts. She withdrew from them for family expenditures only for emergencies, or when she needed money and her joint checking account book was unavailable;

(6) Only she was involved in the many complicated legal affairs of the ranch. Only she saw the attorneys and paid their fees;

(7) A quiet title action to the property was prosecuted in her name alone;

(8) Finally, the husband's pattern of noninvolvement in the ranch was attested to by distinterested third party witnesses.

In summary, five volumes of evidence, and even considering it in the best possible light for John Gaskie, compels our conclusion that his efforts did not contribute to enhancing the value of the wife's property. He made occasional and minute contributions, which we will not allow to turn into a bonanza. For any participation in the management of this land, the husband was adequately compensated by the income or benefits received therefrom. *Lar-*

rabee v. Larrabee, 31 Colo. App. 493, 504 P.2d 358 (1972).

It is manifestly against the weight of the evidence to conclude that through the parties' course of dealing with the ranch it somehow lost its separate identity as the wife's sole property and merged into a family asset. Nor can we conclude that through the husband's efforts and earning capacity the wife was able to retain the ranch, whereas without him she would have lost it. Therefore we hold as a matter of law that the wife's ranch property, its appurtenant water rights, and the condemnation proceeds shall not be included in this material estate to be shared by John Gaskie.

## II.

The parties have eloquently briefed the issue of whether this case should have been referred to a master, each relying — but differently — upon *Gelfond v. District Court,* 180 Colo. 95, 504 P.2d 673 (1972). We feel the issue is moot. The trial court did not have the benefit of *Gelfond* when the reference was made. The master has put in a lot of time, and must be paid. And since we have decided the important point of law, it would be fruitless to simply reiterate anew before a trial court the massive evidence already heard and compiled.

However, for the future aid of trial courts we would briefly like to underscore the salient points of *Gelfond.* Reference under C.R.C.P. 53(b) should be the exception, not the rule. Calendar congestion, complex issues of fact and law, and lengthy trial time do not offer the exceptional circumstances necessary for reference. Nor does the mere fact that an accounting may be necessary, unless it is beyond the competence of the court. Even then, the court should first hear and determine what issues it can, before making a reference of the remainder. Only then has the judge fulfilled his constitutional responsibilities and avoided possible prejudice to the litigants. *See La Buy v. Howes Leather Co., Inc.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).

## III.

We mentioned earlier that the trial judge adopted the master's report virtually *in toto,* without first reading the record of the proceedings. That is reversible error. *Maniatis v. Stiny,* 130 Colo. 261, 274 P.2d 975 (1954). Since timely objections to the master's report have been made, we charge the trial judge to

read the entire record before complying with our directions below.

The judgment is reversed. We remand to the trial court with directions:

(1) to redistribute the remaining marital property, exclusive of the ranch related properties or its converted assets, as that court in its discretion deems equitable;

(2) to consider whether under the circumstances of this case an award of alimony is proper;

(3) to enter a meaningful child support order, keeping in mind that the wife has some responsibility in this area.