COLORADO COURT OF APPEALS                                    **2017COA94**

Court of Appeals No. 16CA0259
Jefferson County District Court No. 88DR2670
Honorable Christine M. Phillips, Judge

In re the Marriage of

Josephine Marie Kann, n/k/a Josephine Marie Voshell,

Appellee,

and

Bruce Allen Kann,

Appellant.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WEBB
Booras and Freyre, JJ., concur

Announced July 13, 2017

J. Matthew DePetro, Greenwood Village, Colorado, for Appellee

Pelegrin & Radeff, P.C., Andrew N. Hart, Lakewood, Colorado, for Appellant

¶ 1     In a post dissolution of marriage proceeding, should laches be recognized as a defense to collection of spousal maintenance arrearages or interest on arrearages?  This question is undecided in Colorado and no clear majority rule has emerged among courts of other states.  We conclude that laches should be recognized as a defense to collection of both arrearages and interest.

¶ 2     Therefore, we reverse the trial court's order in part and remand for further proceedings on laches and its potential impact on the court's maintenance and attorney fees awards.  However, we affirm rejection of the waiver and estoppel defenses to collection.

## I.  Facts and Procedural Background

¶ 3     The decree dissolving the marriage between Bruce Allen Kann (husband) and Josephine Marie Kann, now known as Josephine Marie Voshell (wife), was entered in 1989.

¶ 4     Under the terms of the parties' separation agreement, which the trial court incorporated into the decree, husband agreed to pay wife lifetime maintenance of no less than $1200 per month.  The agreement also provided that in the event of a breach, the prevailing party would be entitled to recover costs, expenses, and reasonable attorney fees.  Although husband was unrepresented in the

dissolution proceeding, he has never disputed that he knew of and understood these terms.

¶ 5　For the next twenty-six years, husband never paid maintenance and wife never asked him to do so. But in 2015, suddenly things changed.

¶ 6　Wife retained counsel and sought entry of judgment for $520,636.32 — $289,200 in unpaid maintenance and $231,436.32 in interest. She also requested a maintenance modification if the court did not award her the full judgment. Husband denied any obligation to pay maintenance. He raised three affirmative defenses: waiver, estoppel, and laches. Alternatively, he asked that if wife received her full judgment, the court should terminate his maintenance obligation.

¶ 7　The court held a hearing. Wife and husband (now also represented by counsel) testified. In lengthy oral findings and conclusions, the court

- concluded that under the decree, husband was obligated to pay maintenance;

- held that Colorado law does not recognize husband's laches defense;

- found that husband had failed to meet his burden of proof on the waiver and estoppel defenses; and

- enforced the full $520,636.32 judgment against him.

¶ 8 Going forward, the court decreased wife's lifetime maintenance award from $1200 to $800 per month. Finally, it awarded wife her attorney fees as the prevailing party under the separation agreement.

¶ 9 Husband appeals these findings and conclusions. Wife concedes preservation.

## II. Application of Laches in Proceedings to Enforce Past Due Spousal Maintenance Payments

¶ 10 Husband primarily contends he should have been able to raise laches in defending against wife's claim for past due spousal maintenance and interest. We hold that laches may be raised as a defense to both an unpaid spousal maintenance award and any accrued interest.

### A. Standard of Review and Law

¶ 11 The availability of an affirmative defense is a question of law subject to de novo review. *In re Marriage of Johnson,* 2016 CO 67, ¶ 9.

¶ 12     No Colorado case has addressed whether laches applies in a proceeding brought solely to collect maintenance arrearages and interest. But several cases have addressed this defense in proceedings to enforce combined support (child support and maintenance) or child support awards. *See Hauck v. Schuck*, 143 Colo. 324, 327, 353 P.2d 79, 81 (1960) (child support); *Jenner v. Jenner*, 138 Colo. 149, 151, 330 P.2d 544, 545 (1958) (combined support); *Hamilton v. Hamilton*, 104 Colo. 615, 618-19, 94 P.2d 127, 128 (1939) (same); *Price v. Price*, 80 Colo. 158, 160, 249 P. 648, 649 (1926) (same); *In re Marriage of Meisner*, 807 P.2d 1205, 1207 (Colo. App. 1990) (child support).

¶ 13     Those cases have held that while laches is an available defense when a party brings a contempt citation to punish nonpayment of support, *see, e.g.*, *Price*, 80 Colo. at 160, 249 P. at 649, it is not available in actions to collect past due support, *see, e.g.*, *Hauck*, 143 Colo. at 327, 353 P.2d at 79; *Jenner*, 138 Colo. at 151, 330 P.2d at 545; *see also Frick v. Frick*, 500 P.2d 373, 374 (Colo. App. 1972) (not published pursuant to C.A.R. 35(f)) (laches released husband from enforcement of contempt judgment for support owed between 1963 and 1971, but did not apply to enforcement of his

4

current support obligation).  The latter conclusion rests on the rationale that a support order is a continuing money judgment.  *See Hauck*, 143 Colo. at 327, 353 P.2d at 81.

¶ 14     In *Johnson*, 2016 CO 67, our supreme court re-examined whether laches applies as a defense to recovery of statutory interest in a child support enforcement action.  The trial court did not have the benefit of this decision when it ruled.

¶ 15     *Johnson* involved a 1983 decree of dissolution that required the husband to pay $400 in monthly child support.  *Id.* at ¶ 2.  Twenty-nine years later, the wife sought and received a judgment against him for $23,260.27 in unpaid child support, plus interest.  *Id.* at ¶¶ 3, 5.  The husband's laches defense was rejected by the magistrate, the trial court on review, and a majority of a division of this court.  *See id.* at ¶¶ 3-4, 6; *In re Marriage of Johnson*, 2014 COA 145, *rev'd*, 2016 CO 67.

¶ 16     Specially concurring, Judge Berger opined that laches provides "a needed 'safety-valve' in unusual cases."  *Johnson*, 2014 COA 145, ¶ 21.  He pointed to a recent supreme court case, *Hickerson v. Vessels*, 2014 CO 2, holding that laches can be a defense to both legal and equitable claims and that "legislatively

prescribed limitations periods do not ordinarily preclude a laches defense." *Johnson,* 2014 COA 145, ¶ 23 (quoting *Hickerson,* ¶ 17). And he offered that *Hickerson*'s rationale "is fully applicable, at least to the interest component of child support arrearages." *Id.* at ¶ 24.

¶ 17     On certiorari review, the supreme court generally agreed with the special concurrence. The court noted that *Hickerson* "cast doubt on" the earlier opinions barring laches as a defense to claims for interest on past due child support. *Johnson,* 2016 CO 67, ¶ 21. Then it framed this issue by distinguishing between principal and interest.

¶ 18     As to principal, the court began by recognizing that child support belongs to children, not their parents. *Id.* at ¶ 22. It explained, "as a policy matter, a parent's delay in enforcing a judgment for child support should not prejudice the child's right to parental support." *Id.* Unsurprisingly, it adhered to the view that laches should not be a defense to principal.

¶ 19     But the court's approach to interest was more nuanced. Citing out-of-state authority, the court recognized the anomaly of a "dilatory parent" who "waits until the child has reached the age of majority to seek unpaid child support," a time when the award

might reimburse that parent but would "not cognizably advance the child's welfare." *Id.* at ¶ 23. Next, it drew on *Price* — a contempt action — for the proposition that recovering arrearages of alimony "amounts simply to a reimbursement of the wife. She is the one who reaps the benefit." *Johnson,* 2016 CO 67, ¶ 24 (quoting *Price,* 80 Colo. at 160, 249 P. at 649). The court synthesized these principles by observing that allowing a laches defense to interest "would serve the dual purposes of protecting the right of children to parental support and encouraging parents to enforce child support obligations promptly." *Id.* at ¶ 27.

## B. Application

### 1. Interest

¶ 20    We conclude that *Johnson*'s rationale applies with equal force to proceedings in which a party seeks interest on maintenance arrearages. Specifically, only the recipient spouse benefits from recovering interest on the arrearage. Allowing laches as a defense would encourage prompt assertion of the claim which, as discussed below, could grow exponentially over time. And recovering accrued interest after a lengthy delay could be a windfall. *Cf. Price,* 80 Colo. at 160, 249 P. at 649 (noting that where the recipient spouse "reaps

7

the benefit" of a past due recovery, laches should apply "in cases where the arrears in alimony relate to alimony for her own support").

## 2. Principal

¶ 21    Whether laches should be recognized as defense to principal presents a harder question.  Granted, *Johnson* declined to apply laches to bar collection of the principal amount of child support.  *See* 2016 CO 67, ¶ 22.  Yet, the policy underpinnings of this portion of the opinion do not apply to spousal maintenance.  Three differences are informative.

¶ 22    First, child support is a right that belongs to and benefits the child, not the parent to whom it is awarded.  *See Samuel J. Stoorman & Assocs., P.C. v. Dixon*, 2017 CO 42, ¶ 12; *see also Johnson*, 2016 CO 67, ¶ 22.  Thus, if a parent fails to enforce a child support award for their child, the child suffers.  *See Johnson*, 2016 CO 67, ¶ 26.

¶ 23    In contrast, maintenance is not awarded as a matter of right, but may be granted only under circumstances specified in the statute.  *See In re Marriage of Wagner*, 44 Colo. App. 114, 116, 612 P.2d 1147, 1148 (1980); *see also* § 14-10-114(1)(a)(II), C.R.S. 2016

8

(trial court may award maintenance if one spouse needs it and the other spouse can pay). And because maintenance benefits solely the spouse to whom it is awarded, *Stoorman*, ¶ 12, the only person who suffers from failing to enforce a maintenance judgment is that spouse.

¶ 24 Second, child support mitigates potential harm to children from dissolution of the marriage by approximating the financial benefits a child would have enjoyed in an intact household. *See* §§ 14-10-104.5, 14-10-115(1)(b)(I), C.R.S. 2016; *see also In re Marriage of Nimmo*, 891 P.2d 1002, 1007 (Colo. 1995). In other words, child support effectively maintains the child's standard of living after the divorce. Thus, failing to enforce such an award would result in a decreased standard of living for the child. *See Nimmo*, 891 P.2d at 1007.

¶ 25 Maintenance, however, is primarily concerned with providing that the basic needs of a disadvantaged spouse are met; it ensures that the lesser-earning spouse has means to pay for food, clothing, and shelter. *See In re Marriage of Ikeler*, 161 P.3d 663, 669 (Colo. 2007); *In re Marriage of Mirise*, 673 P.2d 803, 804 (Colo. App. 1983). Maintenance does not guarantee that spouses enjoy an equal

lifestyle forever. *See In re Marriage of Antuna*, 8 P.3d 589, 595 (Colo. App. 2000). So, if the recipient of a spousal maintenance award has significantly delayed attempting to enforce the award, a fair inference could arise that the spouse does not need the underlying award to meet basic needs.

¶ 26    Third, the duration and potential accrual of child support and maintenance awards differ. While in most cases child support terminates when the child turns nineteen, *see* § 14-10-115(13)(a), maintenance can continue over the payee spouse's lifetime. *See* § 14-10-114(3)(e); *Wagner*, 44 Colo. App. at 116, 612 P.2d at 1148. As a result, unpaid maintenance awards can accrue to exorbitant amounts, while unpaid child support accruals will usually be more limited.

¶ 27    *Johnson* did not need to reconcile these differing policy considerations because it addressed only child support. Still, they loom large over this proceeding. Even so, we look beyond *Johnson*.

¶ 28    We begin by returning to *Jenner*, 138 Colo. 149, 330 P.2d 544, the only other supreme court case that has tangentially addressed this specific issue. Of course, "we are bound by the decisions of the Colorado Supreme Court." *Pressey ex rel. Pressey v. Children's*

*Hosp. Colo.*, 2017 COA 28, ¶ 31. But a closer look shows *Jenner* to be distinguishable.

¶ 29 In *Jenner*, the wife secured a judgment against the husband for nonpayment of a combined maintenance and child support award. 138 Colo. at 150, 330 P.2d at 544. The husband admitted nonpayment but asserted laches as a defense. *Id.* at 150, 330 P.2d at 545. Citing *Lowell's Estate v. Arnett*, 104 Colo. 343, 347, 90 P.2d 957, 959 (1939), and *Hamilton*, 104 Colo. at 618-19, 94 P.2d at 128, the supreme court limited laches to contempt proceedings. *Jenner*, 138 Colo. at 151, 330 P.2d at 545. So, unlike the case before us, *Jenner* involved both maintenance and child support.

¶ 30 With only this much for guidance, we turn to cases from other jurisdictions that have considered the laches defense in actions to enforce maintenance. This issue has been addressed in most jurisdictions. While a clear majority rule has not emerged, the competing rationales are noteworthy.

¶ 31 Roughly half of the jurisdictions appear to hold that laches is not a defense in a proceeding to enforce a money judgment like maintenance. *See, e.g., Cartron v. Cartron*, 565 So. 2d 656, 659 (Ala. Civ. App. 1990); *Lantz v. Lantz*, 845 P.2d 429, 432 (Alaska

11

1993), *overruled on other grounds by State v. Dean*, 902 P.2d 1321 (Alaska 1995); *Heisley v. Heisley*, 676 S.W.2d 477, 477-78 (Ky. Ct. App. 1984) (citing *Ryan v. Ryan*, 219 N.W.2d 912, 916 n.2 (Minn. 1974)); *Nicholas v. Nicholas*, 841 So. 2d 1208, 1212 (Miss. Ct. App. 2003); *Richter v. Richter*, 126 N.W.2d 634, 637 (N.D. 1964); *Strickland v. Strickland*, 650 S.E.2d 465, 470 (S.C. 2007)*; Bennett v. Commonwealth*, 422 S.E.2d 458, 463 (Va. Ct. App. 1992); *Wall v. Wall*, 410 N.W.2d 593, 595 (Wis. Ct. App. 1987).

¶ 32     In rejecting laches outright, several of these jurisdictions appear to have an applicable statute of limitations that bars its application or they do not recognize an equitable defense to a legal claim, like a money judgment accruing under a divorce decree. *See, e.g.*, *Lantz*, 845 P.2d at 432 (ten-year statute of limitations is the "sole line of demarcation" to recover maintenance arrearages) (citation omitted); *Ryan*, 219 N.W.2d at 916 n.2 (equitable defenses are not available in an action based on accrued payments due under a divorce decree).

¶ 33     But many other jurisdictions allow a payor spouse to assert laches in maintenance enforcement proceedings. *See, e.g.*, *Medeiros v. Medeiros*, 514 S.W.3d 504, 508 (Ark. Ct. App. 2017)

(noting that laches is specifically permitted by Ark. Code Ann. § 9-17-607(5) (2017)); *Fromm v. Fromm*, 948 A.2d 328, 333 (Conn. App. Ct. 2008); *Frazier v. Frazier*, 616 So. 2d 575, 579 (Fla. Dist. Ct. App. 1993) (holding also that equitable proceedings to enforce alimony and child support orders are not barred by a statute of limitations); *Brochu v. McLeod*, 148 A.3d 1220, 1226 (Me. 2016); *Rybinski v. Rybinski*, 53 N.W.2d 386, 388 (Mich. 1952); *Clarke v. Clarke ex rel. Costine*, 821 A.2d 104, 109 (N.J. Super. Ct. App. Div. 2003).

¶ 34    The rationale of these cases appears to be that the facts of each case should determine whether the defense applies.  *See, e.g., Frazier*, 616 So. 2d at 579.

¶ 35    Review of these authorities has brought us full circle.  Recall, Colorado Supreme Court precedent does not prevent us from holding that a payor spouse may raise laches as a defense to a claim for maintenance arrearages as well as for accrued interest. And *Johnson* has removed an impediment to doing so — the flawed comparison to child support cases.

¶ 36     Based on the rationales advanced by courts elsewhere, the following considerations persuade us that allowing laches under these circumstances is the better reasoned view:

- the only applicable statutory limitations period — twenty years under section 13-52-102(2)(a), C.R.S. 2016 — does not preclude maintenance arrearages from mounting to exorbitant levels;

- this statute of limitations does not foreclose recognizing laches, *see Hickerson*, ¶ 9;

- applying laches no longer turns on the distinction between legal and equitable actions, *Johnson*, 2016 CO 67, ¶ 20;

- our supreme court has noted that "[e]quity by its very nature is applied on a case-by-case basis," *Cedar Lane Invs. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d 879, 884 (Colo. App. 1996); and

- our supreme court has also expressed unbridled confidence in trial courts to weigh conflicting evidence, *see People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo. 2010) ("Thus, while a trial court may properly attach more weight to more recent evidence, whether it should do so is necessarily determined by

its assessment of witness credibility, and its analysis of the sufficiency and probative value of the evidence presented at trial. Therefore, the decision of whether to afford more weight to more recent evidence falls squarely within the discretion of the trial court.") (citation omitted).

¶ 37 To be sure, merely recognizing husband's laches defense does not mean that it will succeed. While the trial court held that laches did not apply to either principal or interest, in the alternative it made limited findings that husband had failed to meet his burden of proving this defense. Even so, for the reasons discussed in the following section, we further conclude that a remand is required.

### C. Scope of the Remand

¶ 38 Considering the elements of laches outlines the need for a remand.

### 1. Laches Elements

¶ 39 Laches shields a party from untimely claims. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. \_\_\_, \_\_\_, 137 S. Ct. 954, 960 (2017). As an equitable doctrine, it may be asserted to deny relief to a party whose unconscionable

delay in enforcing a right has prejudiced the adverse party. *See Hickerson*, ¶ 12.

¶ 40    A laches defense comprises three elements: (1) full knowledge of the facts by the party against whom the defense is asserted; (2) unreasonable delay by that party in pursuing an available remedy; and (3) intervening reliance by and prejudice to the party asserting the defense. *Id.*

¶ 41    Everyone before us agrees that wife knew of the maintenance award, yet waited twenty-six years to enforce it. So, we address only the reasonableness of her delay and any resulting prejudice to husband.

a. Unreasonable delay

¶ 42    Unreasonable delay is a question of fact that depends on the circumstances of each case. *See Keller Cattle Co. v. Allison*, 55 P.3d 257, 261 (Colo. App. 2002). "What may be inexcusable delay in one case will not be inconsistent with diligence in another." *See* 2 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* § 419c, at 175-76 (5th ed. 1941).

¶ 43    When deciding whether delay is unreasonable, a trial court must weigh not only the length of time but also the attendant

16

circumstances. *Loveland Camp No. 83, W.O.W. v. Woodmen Bldg. & Benevolent Ass'n,* 108 Colo. 297, 305, 116 P.2d 195, 199 (1941). Considerations include "the acts and conduct of the party, if any, indicating either his assent to or acquiescence in the acts of the opposing party of which he then complains, or a waiver of his rights, and the nature and character of the property interests involved and to be affected." *See Foley v. Terry,* 532 P.2d 765, 767 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)) (quoting *Graff v. Portland Town & Mineral Co.,* 12 Colo. App. 106, 113, 54 P. 854, 856 (1898)). But no matter how unreasonable the delay, the inquiry still shifts to prejudice.

### b. Prejudice

¶ 44     "Laches in legal significance, is not mere delay, but delay that works a disadvantage to another." Pomeroy § 419d, at 178-79. Thus, the party asserting laches has the further burden of demonstrating prejudice. *Nolan v. Dist. Court,* 195 Colo. 6, 9, 575 P.2d 9, 10 (1978).

¶ 45     In turn, prejudice must necessarily result from justifiable reliance on the actions of the opposing party, under the circumstances of the case considered as a whole. *City of Thornton*

*v. Bijou Irrigation Co.*, 926 P.2d 1, 74 (Colo. 1996); *see also* Pomeroy § 419d, at 179 (commenting that prejudice requires a "showing as to whether the situation of the adverse party underwent a change during the period which elapsed while the complainant delayed institution of suit").  Prejudice may be economic, such as liability for greater damages or loss of return on investment that a timelier lawsuit would likely have prevented.  *Bristol Co. v. Osman,* 190 P.3d 752, 755 (Colo. App. 2007).  Other forms of prejudice include detrimental change of position by the defendant or other circumstances arising during the period of delay that impair the defendant's ability to defend.  *See Cullen v. Phillips,* 30 P.3d 828, 833 (Colo. App. 2001).

### c.  Interdependence

The concepts of delay and prejudice do not operate in their own separate vacuums but are, instead, interrelated.  In *Bristol Co.,* 190 P.3d at 755, the division explained as follows:

> A trial court must balance, on the one hand, the length of the delay in filing the infringement suit and the plaintiff's explanation for the delay, against, on the other hand, the prejudice to the defendant resulting from the delay.  Thus, it involves a weighing of

18

equities and depends on the trial court's evaluation of the circumstances.

¶ 47    In other jurisdictions, a clear showing of one factor permits a lesser showing of the other: "If only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require[d] before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." *Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir. 1988) (quoting *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 807 (8th Cir. 1979)); *see also Batiste v. City of New Haven*, 239 F. Supp. 2d 213, 225 (D. Conn. 2002) ("Where there is no excuse for delay, defendants need show little prejudice; a weak excuse for delay may, on the other hand, suffice to defeat a laches defense if no prejudice has been shown.") (citation omitted); *Pavlik v. State*, 637 P.2d 1045, 1048 (Alaska 1981) ("[W]here there is a long delay, a lesser degree of prejudice will be required.").

    2.  Application to Trial Court's Findings on Burden of Proof

¶ 48    Recall, the trial court alternatively found that "even if laches were a defense in this particular proceeding, Husband did not prove to the Court that he suffered any prejudice as a result of not paying

court ordered maintenance for [twenty-six] years." Notwithstanding deference to trial court factual findings, this "even if" finding is insufficient in three ways for us to conclude that husband failed to establish laches.

¶ 49    First, because delay and prejudice are interdependent, the court could not resolve prejudice without also considering the reasonableness of wife's delay. Failure to do so is especially problematic where, as here, the delay was very lengthy. But in its "even if" discussion of laches, the court did not specifically address whether wife's delay was reasonable.

¶ 50    True, the court referenced wife's testimony that she feared husband, thought he was controlling, was concerned that he would hurt their grandchildren, and had difficulty finding an attorney who would take her case. Yet it did so in ruling that wife had not expressly waived her right to maintenance. Never did the court tie this evidence to its laches determination or find the delay to have been reasonable.

¶ 51    Second, while the court took up the prejudice element of laches, it did so in the context of husband's assertion that he "was relying on an oral agreement." The court then explained that

having found no such agreement, "the court cannot find Husband was prejudiced by Wife seeking judgment now."  But laches does not turn on, in the court's words, "an oral or implied agreement to waive maintenance."

¶ 52    Third, the court found that "Husband was able to buy and sell homes in the ensuing years post-divorce, earn a substantial retirement, earn a master's degree, and live a comfortable lifestyle."  But this approach proves too much.  After all, because the judgment debtor asserting laches will always have retained money that would otherwise have been paid to the judgment creditor, that gain cannot be the sole basis for declining to find prejudice.

¶ 53    Given all this, we remand for the trial court to reconsider the full scope of the laches defense, evaluate both delay and prejudice, and address the interdependence between them.  The court shall do so on the existing record, without taking further evidence.

### III. Other Affirmative Defenses

¶ 54     Husband challenges the trial court's rejection of his implied waiver and estoppel defenses.[1]  We uphold the trial court's conclusions.

### A. Waiver

#### 1. Law

¶ 55     Waiver is the intentional relinquishment of a known right, and may be implied from a party's conduct if the conduct is free of ambiguity and clearly manifests the intent not to assert the right. *In re Marriage of Hill*, 166 P.3d 269, 273 (Colo. App. 2007).

¶ 56     We review a trial court's waiver conclusion for an abuse of discretion. *see, e.g., Shoen v. Shoen*, 2012 COA 207, ¶ 12 ("[Plaintiff]'s choice of law argument raises a question of waiver, which we review for an abuse of discretion."), which means that the court has misconstrued or misapplied the law, or makes a decision that is manifestly arbitrary, unreasonable, or unfair.  *See Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 24.

---

[1] In his briefs, husband clarifies that he does not appeal the trial court's finding of no express waiver.

## 2. Application

¶ 57    Husband argues that wife told him that she waived her right to maintenance, but in any event, she showed implied waiver by failing to raise nonpayment of the award "despite opportunities to do so" during the twenty-six years.  He points to different occasions — baptisms, a funeral, weddings, and some telephone calls — when the parties talked to one another and wife could have asked for maintenance.

¶ 58    For her part, wife acknowledged seeing husband during the twenty-six-year period, but denied that they interacted or communicated with one another.  She testified that she "always planned on getting maintenance at some point," and that she delayed collecting not because of any verbal agreement but because she feared husband, for the reasons discussed above.

¶ 59    The trial court resolved the conflicting testimony in wife's favor, finding no express or implied waiver.  The court found that wife "testified credibly that there was no conversation . . . about non-payment of maintenance to her."  It explained that "[h]usband's testimony was vague about the nature of the conversation, where it took place, and any details which would convince the Court that

23

wife was knowingly giving up her right to maintenance under the separation agreement." The court also rejected husband's argument that wife's twenty-six-year delay signified an implied waiver, finding that wife would not have given up "a substantial amount of maintenance for a lifetime" when she was "dealing with health problems and starting a new business."

¶ 60 The court had the prerogative to decide which party it believed and on this basis to conclude that no implied waiver occurred. *See A.J.L.*, 243 P.3d at 250. Because the record supports its determination, the court properly exercised its discretion. *See Shoen*, ¶ 12.

### B. Estoppel

#### 1. Law

¶ 61 The equitable estoppel doctrine may afford relief from accrued arrearages. *In re Marriage of Beatty*, 2012 COA 71, ¶ 13 (child support). Before it may be applied as a bar, four elements must be proven: (1) the party against whom estoppel is asserted knew the true facts; (2) that party intended its conduct be acted on by the other party or led the other party to believe that its conduct is so intended; (3) the party asserting estoppel was ignorant of the true

24

facts; and (4) the party asserting estoppel detrimentally relied on the other party's conduct. *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992).

¶ 62 "Whether the circumstances of a particular case involve representation and reasonable reliance giving rise to equitable estoppel are questions of fact." *Rocky Mountain Nat. Gas, LLC v. Colo. Mountain Junior Coll. Dist.*, 2014 COA 118, ¶ 30. "Findings of fact must be accepted on review, unless they are so clearly erroneous as not to find support in the record." *Ward v. Dep't of Nat. Res.*, 216 P.3d 84, 93 (Colo. App. 2008).

### 2. Application

¶ 63 Husband asserts that he proved all four elements of estoppel: (1) wife knew of the maintenance award; (2) wife knew all along that she would seek to collect it eventually; (3) he did not know of her intention to collect maintenance; and (4) he detrimentally relied on wife's inaction by making life choices that he would not otherwise have made had he known that she intended to collect maintenance.

¶ 64 The trial court rejected husband's estoppel defense, making the following findings: (1) husband understood his obligation to pay maintenance under the separation agreement; (2) wife never told

him that he did not have to pay maintenance; and (3) husband did not detrimentally rely on wife's assertion that she would not collect maintenance.

¶ 65   As for this last finding, the court noted that husband's "non-payment of maintenance is not detrimental reliance." To the contrary, the court described husband as being "substantially better off" for not paying any maintenance over the twenty-six years, noting that he had a boat, an ATV, retirement funds, a home with land and cars; he had obtained a master's degree; and he could take a year off from work to build a custom home. The court also found that husband did not explain how he would have acted differently had he known wife would collect maintenance.

¶ 66   As with waiver, although contrary evidence may exist in the record, the court was free to weigh the evidence as it did and to determine that husband did not establish all four elements of the defense. *See id.*; *A.J.L.*, 243 P.3d at 250; *Rocky Mountain Nat. Gas, LLC*, ¶ 30. We perceive no basis on which to disturb the court's rejection of the estoppel defense.

¶ 67   Husband's emphasis on the lack of findings about wife's intentions does not require a different outcome. The court's finding

that he failed to prove detrimental reliance alone precludes estoppel. *See Shorey*, 826 P.2d at 841 (estoppel requires a showing of all four elements); *see also Beatty*, ¶ 13 (the party claiming estoppel must demonstrate detrimental reliance).

## IV. Modification of Maintenance

¶ 68 Husband contends the trial court erred in modifying rather than terminating his maintenance obligation. We are unable to resolve this contention because the propriety of the court's order will depend on whether the court awards wife none, part, or all of her request for maintenance arrearages plus interest. Therefore, we reverse the modified maintenance award and remand for the court to reconsider the issue once it has determined whether laches bars any of wife's requested relief.

### A. Facts and Procedural Background

¶ 69 In the joint trial management certificate, the parties took "all or nothing" positions on whether the trial court should continue or terminate wife's maintenance award. Wife sought "a future maintenance claim *only if* she is denied her judgment." (Emphasis added.) Husband "request[ed that the trial court] terminate the current maintenance Order *if* the Court does not find that [his]

27

affirmative defenses absolve him of his obligation to pay [wife] maintenance." (Emphasis added.) In other words, both parties argued that wife should either receive a judgment on past due maintenance or continue to receive maintenance going forward, but not both.

¶ 70 The parties adhered to the "all or nothing" position during closing argument at the hearing. Wife described her motion to modify maintenance as "prophylactic." She reiterated that if the court "were inclined not to give us our half million dollar judgment," her maintenance obligation should remain intact going forward. With little explanation, husband merely asked that the court "in fairness" terminate the award if it rejected his defenses.

¶ 71 For reasons known only to the court, it disregarded these positions by enforcing the full judgment against husband and ordering him to pay continuing, albeit reduced, maintenance for wife's lifetime.

### B. Standard of Review and Law

¶ 72 A trial court may modify the maintenance provisions of a separation agreement incorporated into a dissolution decree if, as

28

here, the agreement is silent on modification. *In re Marriage of Udis*, 780 P.2d 499, 502 (Colo. 1989).

¶ 73    A modification of maintenance requires a showing of changed circumstances so substantial and continuing as to make the existing terms unfair. § 14-10-122(1)(a), C.R.S. 2016. To determine whether changes are substantial and continuing, the court must examine all circumstances pertinent to an initial maintenance award, including all relevant circumstances of both parties. *See Udis*, 780 P.2d at 503; *In re Marriage of Nelson*, 2012 COA 205, ¶ 26.

¶ 74    The party seeking a modification has a heavy burden of proving that the provisions have become unfair under all relevant circumstances. *Udis*, 780 P.2d at 503. Still, in determining whether to continue or modify the maintenance award, a court should recognize that such an award may not impoverish the payor spouse. *Santilli v. Santilli,* 169 Colo. 49, 55, 453 P.2d 606, 609 (1969).

¶ 75    Whether circumstances have sufficiently changed lies within the sound discretion of the trial court based on the facts presented. Absent an abuse of that discretion, we will not disturb the court's

ruling.  *Nelson*, ¶ 27.  And we must construe the evidence in the light most favorable to the prevailing party.  *Id.*

### C.  Application

¶ 76     Because the trial court's treatment of maintenance ignored the parties' de facto agreement that if wife was awarded the entire judgment, she would not receive further maintenance, this portion of the order must be set aside.  On remand, the court shall reconsider this issue.  Consistent with the parties' positions, if wife receives a full judgment, the future obligation terminates; but if she receives no judgment, the obligation continues.

¶ 77     We recognize, however, a third scenario not contemplated by the parties in their "all or nothing" positions — whether to modify or terminate future maintenance should the court only partially enforce the past due the maintenance award.  Granted, "[l]aches is a complete defense."  *Hazard v. E. Hills, Inc.*, 45 A.3d 1262, 1271 (R.I. 2012).  Still, this scenario could arise if the court weighed the equities differently as between principal and interest.

¶ 78     Under this scenario, the court may exercise its discretion in determining whether to continue the maintenance obligation and, if so, whether the parties' current needs and abilities warrant

modification. *See In re Marriage of Ward*, 740 P.2d 18, 20 (Colo. 1987). Any order continuing or modifying maintenance must be supported by findings of fact and conclusions of law sufficiently explicit to give us a clear understanding of the basis of its order. *See In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008).

¶ 79 Finally, because maintenance awards are based on the parties' financial situations when such orders are entered, the trial court may take additional evidence of changed financial circumstances as it deems appropriate. *See In re Marriage of Morton*, 2016 COA 1, ¶ 14.

## V. Trial Court's Attorney Fee Award

¶ 80 Husband contends the trial court erred in awarding wife her attorney fees as the prevailing party under the separation agreement. The parties concede that the fee award must be set aside if we disturb the modification order. We agree and set aside the fee award for reconsideration after the court has resolved husband's laches defense.

¶ 81 We reject wife's argument that on remand the trial court should also consider her prior request for fees under section 14-10-119, C.R.S. 2016. The court did not address this request in

its findings, and wife did not file a cross-appeal challenging the court's omission.  For these reasons, wife is now precluded from arguing that the court must take up this issue on remand.  *See Leverage Leasing Co. v. Smith*, 143 P.3d 1164, 1167-68 (Colo. App. 2006) (holding that where a party does not file a cross-appeal, they may only raise arguments in support of the trial court's judgment that do not seek to increase their rights under the judgment).

## VI.  Appellate Attorney Fee Request

¶ 82     Wife seeks an award of her appellate attorney fees under the separation agreement, section 14-10-119, and C.A.R. 39.1.

¶ 83     Because husband's appeal has succeeded in part, wife is not the prevailing party under the separation agreement.  Nor is husband, because wife succeeded on other issues.  We therefore deny that request.  *See* C.A.R. 39.1.

¶ 84     However, as the trial court is better equipped to resolve the factual issues associated with wife's section 14-10-119 request for appellate attorney fees, we remand this issue for its consideration.  *See Beatty*, ¶ 22.

## VII. Conclusion

¶ 85    We reverse those portions of the trial court's order (1) rejecting husband's laches defense, (2) awarding attorney fees to wife as the prevailing party, and (3) modifying husband's maintenance obligation. We remand the case for the court to consider whether laches bars wife's entitlement to maintenance interest or arrearages, and then to reconsider the maintenance and attorney fee awards based upon its laches determination, as well as wife's claim for appellate attorney fees under section 14-10-119.

¶ 86    In all other respects, the trial court's order is affirmed.

JUDGE BOORAS and JUDGE FREYRE concur.