24CA1188 Peo in Interest of ST 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1188
Jefferson County District Court No. 23JV30070
Honorable Lindsay Van Gilder, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.T., a Child,

and Concerning J.P.T. and J.M.,

Appellants.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Kimberly Sorrells, County Attorney, Claire M. Czajkowski, Assistant County Attorney, Golden, Colorado, for Appellee

Josie L. Burt, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant J.P.T.

Elizabeth A. McClintock, Office of Respondent Parents' Counsel, Colorado Springs, Colorado, for Appellant J.M.

¶ 1 In this dependency and neglect proceeding, J.P.T. (father) and J.M. (mother) appeal the judgment terminating their parent-child legal relationships with S.T. (the child). We affirm.

## I. Background

¶ 2 In March 2023, the Jefferson County Division of Children, Youth, and Families filed a petition in dependency and neglect regarding the then-three-month-old child. The Division alleged concerns about the parents' substance use. The juvenile court granted temporary legal custody to the Division, and the child was placed with kin.

¶ 3 The parents admitted the allegations in the petition, and the juvenile court adjudicated the child dependent or neglected. The court adopted treatment plans that required both parents to address substance abuse issues. The court later amended the treatment plans to additionally require that mother engage in domestic violence victim treatment and father complete anger management classes.

¶ 4 In December, the Division moved to terminate the parents' legal relationships with the child. After a three-day evidentiary

hearing in April and May 2024, the juvenile court granted the Division's termination motion.

## II. Analysis

¶ 5 On appeal, mother contends that the juvenile court erred when it determined that she could not become a fit parent within a reasonable amount of time. Father contends that the termination judgment cannot stand because (1) the Division made no reasonable efforts to rehabilitate him and reunify him with the child and (2) there was a less drastic alternative to termination of his parental rights. We address each of these contentions in turn.

### A. Statutory Criteria and Standard of Review

¶ 6 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 7 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law. *People in Interest of*

*S.R.N.J-S.*, 2020 COA 12, ¶ 10; *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. Thus, we review the court's factual findings for clear error and accept them if they have record support. *S.R.N.J-S.*, ¶ 10. But we review de novo the court's legal conclusions based on those facts. *Id.*

### B. Fitness Within a Reasonable Time

¶ 8 Mother's sole contention is that the juvenile court erred by finding that she could not become fit within a reasonable time. We disagree.

### 1. Applicable Law

¶ 9 A parent is unfit if they are unable or unwilling to give a child reasonable parental care. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 23. "Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs." *S.R.N.J-S.*, ¶ 9. A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 10 A parent must have a reasonable amount of time to work on the issues addressed in a treatment plan before the juvenile court terminates their parental rights. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). The determination of a reasonable period is necessarily fact specific, and thus, what constitutes a reasonable time to comply with a treatment plan may vary from case to case. *Id.* But a reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. *S.Z.S.*, ¶ 25.

¶ 11 In determining whether a parent's conduct or condition is likely to change and whether the parent can become fit in a reasonable time, the juvenile court may consider several factors, including whether any change occurred during the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006). And when, as here, a child is under six years old when the petition is filed, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent

4

home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also S.Z.S.*, ¶ 25.

### 2. The Record Supports the Juvenile Court's Determination that Mother Could Not Become Fit Within a Reasonable Time

¶ 12 The juvenile court considered whether mother could become fit within a reasonable amount of time but ultimately concluded she could not. Specifically, the court found that mother had not demonstrated the kind of progress that was necessary to show that she would be a safe caregiver. The court found that although mother had "demonstrated some effort," she had not complied with her treatment plan "in any significant respect" and exhibited the same problems addressed in her treatment plan "without adequate improvement." The court also found that even if mother "engaged in treatment tomorrow," she would still need "a long period of time" to show that the child could be returned to her, which would not be in the child's best interests. The court noted that there was another dependency and neglect case, related to a different child, that also involved concerns about mother's substance abuse. And in determining whether mother had been given a reasonable amount of time to complete her treatment plan, the court considered the

5

EPP provisions, noting that the child had been out of the home for "almost the entirety of her life" and that the case had been open for more than a year.

¶ 13    The record supports the juvenile court's findings. It shows that although treatment and services were available to mother throughout the case, by the time of the termination hearing, she had not successfully resolved the concerns that initially brought her family to the Division's attention. The caseworker's testimony and report, which was admitted as evidence, established that mother did not complete a substance abuse intake, engage in substance abuse treatment, or provide any urinalysis (UA) tests. During the pendency of the case, she was charged with several different crimes, at least one of which involved illegal drugs. And mother never responded to the domestic violence treatment provider's attempts to contact her nor did she utilize any of the domestic violence resources provided by the Division.

¶ 14    The record also shows that mother's issues with substance use were long standing. Approximately a year before this case opened, the referenced dependency and neglect case was opened in Weld County for the child's older sibling after she was found "alone

sleeping in bed with drug paraphernalia . . . in the home."
Although mother completed inpatient treatment as part of that
case, she relapsed just before this case opened. At that time, she
was not in compliance with her treatment plan in the Weld County
case. The record also shows that different county departments had
received referrals concerning mother's drug use dating back to 2021
and that mother had been charged with criminal drug offenses as
early as 2014.

¶ 15    Last, at the time of termination, the child was eighteen months
old and had been out of the home for fourteen of those months.
The caseworker — who was qualified as an expert in the field of
child protection — testified that even if mother started engaging in
treatment right away, it would take "a significant amount of time"
for her to demonstrate the ability to remain sober and safely parent
the child. The caseworker opined that it would not be in the child's
best interests to wait for mother to improve because the child was
very young and needed permanency, and mother had not engaged
in services for over a year.

¶ 16    To the extent mother argues that the juvenile court misapplied
the EPP provisions by stating that it was required to ensure

permanency "within a certain period of time," we are not persuaded that the court misapplied the statute. True, the EPP provisions do not provide a specific deadline for placing children in a permanent home, but rather, they state that children under the age of six must be placed in a permanent home "as expeditiously as possible." §§ 19-1-102(1.6), 19-3-702(5)(c). Here, the record does not indicate, as mother argues, that the court erroneously believed it was required to close the case because it had been open for more than twelve months. Indeed, after noting that the EPP provisions applied, the court stated that "there [was] no definite period of time that [it was] obligated to keep the case open." It then analyzed whether allowing mother more time to work on her treatment plan was in the child's best interests and determined that it was not. Considering this context, we perceive no misapplication of the statute.

¶ 17   We also reject mother's argument that the juvenile court failed to consider the impact of termination on the child. The court acknowledged the evidence showing that mother's parenting time went well, that she loved the child, and that the child was bonded to her. But the court still found that allowing mother more time

was not in the child's best interests based on her lack of engagement and the child's needs. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence.").

¶ 18 Based on the foregoing, we conclude that the juvenile court properly analyzed whether mother could become fit within a reasonable time. And because the court's determination is supported by the record, we discern no basis for disturbing its termination judgment as to mother. *See S.R.N.J-S.*, ¶ 10.

## C. Reasonable Efforts

¶ 19 Father contends that the juvenile court erred by determining that the Division made reasonable efforts to rehabilitate him and reunify him with the child. We are not persuaded.

### 1. Preservation

¶ 20 As an initial matter, the Division and the guardian ad litem assert that father's reasonable efforts argument is unpreserved. Divisions of this court are split on whether a parent must challenge a department's reasonable efforts prior to the termination hearing to preserve the issue for appellate review. *Compare People in Interest of S.N-V.*, 300 P.3d 911, 916 (Colo. App. 2011) (holding that

a parent's failure to object to services does not bar appellate review of a reasonable efforts findings), *with People in Interest of D.P.*, 160 P.3d 351, 355-56 (Colo. App. 2007) (declining to review a reasonable efforts finding because the parent failed to object to services provided before the termination hearing). However, we need not determine whether father preserved his reasonable efforts argument because even if we assume he did, we discern no basis for reversal.

### 2. Applicable Law

¶ 21    To determine whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *S.N-V.*, 300 P.3d at 911. "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2024. Services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 22    Under section 19-3-208, a department must provide screenings, assessments, and individual case plans for the

10

provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services. § 19-3-208(2)(b). And if funding is available, section 19-3-208(2)(d) requires a department to provide transportation assistance; drug and alcohol services; and financial services. However, these services must be provided only if necessary and appropriate based on the individual case plan. § 19-3-208(2)(b), (d).

¶ 23 A parent is ultimately responsible for using the services to obtain the assistance needed to comply with their treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). In determining whether a department made reasonable efforts, a juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent, measuring them holistically rather than in isolation with respect to specific treatment plan objectives. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35.

### 3. The Record Supports the Juvenile Court's Finding That the Division Made Reasonable Efforts

¶ 24 The juvenile court found, with record support, that the Division made reasonable efforts to provide rehabilitative services to father but that "this task was especially difficult . . . in light of the extended periods without communication" from father as well as his incarceration. Specifically, the caseworker testified that although she had repeatedly reached out to father, he did not meet with her outside of court until approximately nine months into the case. And although the caseworker had set up sobriety monitoring and had made multiple referrals for substance abuse treatment, father never provided any UAs or responded to the treatment provider's attempts to contact him. The caseworker also referred father for an anger management evaluation, but father never completed the intake paperwork despite many reminders from the caseworker. Moreover, the caseworker arranged supervised and therapeutic family time, both while father was out of custody and while he was incarcerated. The caseworker also referred father to get a free tablet from the Division when he told her he was struggling to obtain a cell phone, but father never picked up the tablet.

¶ 25    We reject father's argument that the Division was required to provide him with financial assistance under section 19-3-208(2)(d) and core services under the Division's administrative regulations to help him obtain stable housing. Although some testimony at the hearing indicated that father was homeless at times, his counsel presented no evidence, testimony, or argument about the financial assistance the Division could or should have provided. Moreover, the caseworker testified that father's homelessness, on its own, did not prevent the Division from placing the child with him. Rather, it was father's ongoing substance use, domestic violence, and involvement with the criminal justice system that prevented the Division from recommending that the child be returned to him.

¶ 26    We are also not persuaded by father's argument that the Division failed to meet its reasonable efforts burden because it did not provide housing information or resources as required under section 19-3-208(2)(b)(III). We acknowledge that the Division did not present evidence or testimony about its efforts to assist father with housing. But the record shows that father was generally unresponsive to the caseworker's attempts to contact him between March and December 2023 — the timeframe in which he was

homeless and may have benefitted from housing assistance. And the caseworker's apparent failure to provide housing resources to father during the time period he was not communicating with her did not constitute a lack of reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12 (A department need not persist with futile efforts when a parent voluntarily absents himself or cannot be located.).

¶ 27 Moreover, by the time father began to consistently engage with the caseworker, housing assistance was unnecessary because he was arrested and remained incarcerated at the time of the termination hearing. Thus, the caseworker's decision to prioritize services related to substance abuse and anger management was reasonable. *See* § 19-3-208(2)(b), (d) (Services must only be provided if they are determined to be "necessary and appropriate."); *see also My.K.M.*, ¶ 33 (The department "retain[s] discretion to prioritize certain services or resources to address a family's most pressing needs in a way that will assist the family's overall completion of the treatment plan.").

¶ 28 Last, we reject father's argument that the Division failed to provide transportation assistance as required by section

19-3-208(2)(d)(I) because the argument is undeveloped. Father does not point to anything in the record that shows he needed transportation assistance, nor does he articulate how it would have helped him accomplish his treatment plan objectives. *See* § 19-3-208(2)(b), (d) (Services must only be provided if they are determined to be "necessary and appropriate."). Thus, we decline to address this argument. *See* C.A.R. 28(a)(7)(B); *People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an appellate argument presented without supporting facts, specific argument, or specific supporting authorities).

¶ 29    In sum, the juvenile court did not err by determining that the Division made reasonable efforts to rehabilitate father, particularly when considering the record showing that the Division provided numerous services related to father's treatment plan objectives despite his lack of engagement and communication with the caseworker. *See My.K.M.,* ¶ 33 (noting that the court must look at the totality of the circumstances to analyze reasonable efforts); *A.V.,* ¶ 12 (A juvenile court may consider a parent's unwillingness to participate in treatment as a factor in determining whether a department made reasonable efforts.).

## D. Less Drastic Alternatives

¶ 30 Father contends that the juvenile court erred by determining that there was no less drastic alternative to termination. He argues that, based on the Division's failure to make reasonable efforts to provide appropriate services, the court should have found that giving him more time to work on his treatment plan was a less drastic alternative to termination. But this claim is derivative of the argument that the Division failed to make reasonable efforts, which we have already rejected above. Thus, there is no need to separately address this issue.

## III. Disposition

¶ 31 The judgment is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.