The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 6, 2025

**2025COA86**

**No. 24CA1786, *People in Interest of H.L.B.* — Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship — Criteria for Termination — Less Dramatic Alternatives — Allocation of Parental Responsibilities**

In this dependency and neglect case, a department of human services appeals a juvenile court's order denying its motion to terminate the parent-child legal relationship, arguing that the juvenile court erred because the court was precluded from finding that an allocation of parental responsibilities (APR) was an available less drastic alternative to termination and in the child's best interests when the child's placement provider at the time of the termination hearing was not willing to be a party to an APR.

Applying *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 37, the division observes that whether a less drastic alternative is available and in the best interests of the child is a fact-intensive,

case-specific inquiry to which an appellate court must accord deference.

Applying this standard, the division concludes that, based on the circumstances of this case, the juvenile court's finding that there was a less drastic alternative to termination in the form of an APR is supported by the record. In reaching this conclusion, the division rejects the proposition that the current availability of a specific less drastic alternative (i.e., an APR to specific individuals) is a necessary prerequisite for a court to conclude that a less drastic alternative is available; instead, the division concludes that current availability is among the multitude of factors that a juvenile court may consider in assessing whether the less drastic alternative is in the child's best interests.

The division further concludes that the record supports the court's finding that an APR was in the child's best interests — meaning it was the best option for this child. Accordingly, the division affirms the juvenile court's order denying the motion to terminate parental rights.

Court of Appeals No. 24CA1786
Mesa County District Court No. 23JV8
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Appellant,

In the Interest of H.L.B., Child-Appellant,

and Concerning A.S.,

Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE JOHNSON
Grove, J., concurs
Welling, J., specially concurs

Announced November 6, 2025

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellant The People of the State of Colorado

Josie L. Burt, Guardian Ad Litem

Just Law Group LLC, John F. Poor, Denver, Colorado, for Appellee

¶ 1     In this dependency and neglect action, the Mesa County Department of Human Services (the Department) appeals the juvenile court's order denying its motion to terminate the parent-child legal relationship between A.S. (mother) and H.L.B. (the child).

¶ 2     The Department contends that the juvenile court erred by denying its motion because the court was precluded from finding that an allocation of parental responsibilities (APR) was an available less drastic alternative to termination and in the child's best interests when the child's placement provider at the time of the termination hearing was not willing to be a party to an APR.  In other words, the Department asserts that, because there was not a less drastic alternative to termination *currently available*, the juvenile court erred as a matter of law by denying its request to terminate mother's parental rights.

¶ 3     In *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 37, the supreme court held that a juvenile court should deny a department's motion to terminate the parent-child relationship if, "in connection with its overall consideration of the statutory criteria for termination, [the court] finds that a less drastic alternative is available and is in the child's best interests."  Whether a less drastic

1

alternative is available and in the best interests of the child is a fact-intensive, case-specific inquiry to which we must accord deference.

¶ 4      Based on the circumstances of this case, we conclude that the juvenile court's finding that there was a less drastic alternative to termination in the form of an APR is supported by the record.  In reaching this conclusion, we reject the proposition that the current availability of a specific less drastic alternative (i.e., an APR to specific individuals) is a necessary prerequisite for a court to conclude that a less drastic alternative is available; instead, current availability is among the multitude of factors that a juvenile court may consider in assessing whether the less drastic alternative is in the child's best interests.

¶ 5      We further conclude that the record supports the court's determination that an APR was in the child's best interests — meaning it was the best option for this child.  Therefore, the juvenile court did not err by rejecting the Department's motion seeking termination, and we affirm the court's order requiring the dependency and neglect action to remain open.

## I.    Background

¶ 6    The Department filed a petition in dependency or neglect raising concerns about mother's substance dependence. The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for mother requiring her to address her mental health and substance dependence and maintain a relationship with the child by participating in family time. One year after the treatment plan was adopted, the Department moved to terminate mother's parental rights.

¶ 7    After a contested hearing, the juvenile court found that mother had not fully complied with her treatment plan and that the Department had proved by clear and convincing evidence that the statutory criteria for termination had been satisfied. But the court nonetheless denied the Department's motion for termination because it found that an APR was a less drastic alternative to termination and that an APR — not a termination of parental rights — was in the best interests of the child.[1]

---

[1] The juvenile court found that father had abandoned the child and terminated his parental rights; father is not part of this appeal.

¶ 8      The Department and guardian ad litem (GAL) appeal the juvenile court's denial of the termination motion.

## II.      Standard of Review

¶ 9      We review a juvenile court's application of the termination statute to evidentiary questions as a mixed question of law and fact. *See A.M.*, ¶ 15. "Thus, a trial court's factual findings and conclusions will be set aside only where they are 'so clearly erroneous as to find no support in the record.'" *Id.* (quoting *People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo. 2010)).

¶ 10     As part of our review of a juvenile court's decision to deny a motion to terminate the parent-child relationship, we review a juvenile court's less drastic alternative findings, including whether the less drastic alternative is in the child's best interests, for clear error. *See id.* at ¶¶ 15, 44, 49; *see also People in Interest of M.B.*, 70 P.3d 618, 627 (Colo. App. 2003) (holding that if the record supports the juvenile court's findings and conclusions regarding whether a less drastic alternative is in the child's best interests, we may not disturb the court's determination).

¶ 11     It is for the juvenile court as the trier of fact to determine the sufficiency, probative effect, and weight of the evidence and to

assess witness credibility. *A.M.*, ¶ 15; *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982). When the evidence conflicts, a reviewing court may not reweigh the evidence or substitute its judgment for that of the juvenile court merely because there might be evidence supporting a different result. *See A.J.L.*, 243 P.3d at 256.

### III. Applicable Law on Less Drastic Alternatives

¶ 12 A court may terminate parental rights only if it finds, by clear and convincing evidence, that "(1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan, or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time." *A.M.*, ¶ 19. We will refer to these as the "statutory criteria."

¶ 13 A juvenile court must also consider and eliminate less drastic alternatives to termination before entering an order terminating the parent-child legal relationship under section 19-3-604(1)(c), C.R.S. 2025. The supreme court has characterized the consideration of a less drastic alternative as an "implicit" criterion under the statutory

scheme.  *A.M.,* ¶ 19; *see People in Interest of D.B-J.,* 89 P.3d 530, 531 (Colo. App. 2004).

¶ 14 In determining whether to terminate the parent-child relationship, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3); *People in Interest of L.M.,* 2018 COA 57M, ¶ 29.

¶ 15 The parties disagree as to whether a juvenile court must grant a motion to terminate once it determines that all of the statutory and implicit criteria have been established by the requisite burden of proof.  The Department and the GAL contend that the granting of the motion is mandatory under such circumstances, while mother contends that the court retains discretion to deny the motion even if the court finds that all of the statutory and implicit criteria have been established.

¶ 16 It appears that *A.M.* resolves this dispute in favor of the Department and GAL.  In *A.M.,* the supreme court held that if the juvenile court determines that the statutory criteria are satisfied *and* that termination is in the best interests of the child, then it "must" grant the motion to terminate.  *A.M.,* ¶¶ 32, 37.  The court's direction in this regard begins by telling us that "if a trial court

considers a less drastic alternative in connection with its overall evaluation of the statutory criteria for termination and finds that it is in the child's best interests, it should deny the termination request." *Id.* at ¶¶ 32, 37. The court goes on to hold that "if a trial court considers a less drastic alternative in connection with its overall consideration of the statutory criteria for termination and finds that termination is in the child's best interests, *it must reject the alternative and order termination.*" *Id.* at ¶ 32 (emphasis added). Thus, because the juvenile court here found that the statutory criteria were satisfied — and those findings are not challenged on appeal — the propriety of the juvenile court's denial of the motion turns on whether its determination that the less drastic alternative was in the child's best interests is supported by the record. Accordingly, that is where we focus our analysis.

## IV. Analysis

¶ 17 As noted above, the juvenile court determined that a less drastic alternative was in the child's best interests and that "the best interests of [the child] would not be termination of parental rights." The juvenile court found that an APR was a less drastic alternative to termination because it met the child's primary need of

7

maintaining a relationship with mother. The court further found that this primary need outweighed other factors, including mother's failure to demonstrate sobriety and the placement provider's concerns about becoming a permanent placement under an APR. Based on this finding, the court concluded that an APR was an available less drastic alternative that was in the child's best interests, and, therefore, it denied the termination motion. We conclude that the juvenile court's ruling is consistent with *A.M.* and enjoys record support.

## A. The Availability of a Less Drastic Alternative Finding

¶ 18    The Department contends that "an APR was not available because the placement would not accept one."[2]  Specifically, the placement provider testified that she was not open to an APR because "dealing with [mother] is difficult . . . and we don't want to have to deal with it anymore."  Based on this testimony, the Department contends that, because the less drastic alternative was not *currently available*, the juvenile court necessarily erred in its assessment of the less drastic alternative criterion for termination. We disagree.

---

[2] Mischaracterizing the juvenile court's order denying the motion to terminate as one also ordering an APR to the current placement, the Department initially asserted a claim that the juvenile court lacked subject matter jurisdiction to enter the order being appealed. But once it was clarified at oral argument that the juvenile court did not enter an APR order but instead solely denied the termination motion because it found that an APR was in the child's best interests, the Department abandoned its subject matter jurisdiction challenge.  And because we are convinced that the juvenile court had subject matter jurisdiction to enter the order being appealed, we do not address this issue further.  *See People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 24 (where a "court has already obtained subject matter jurisdiction, a later failure to follow statutory requirements does not divest the court of subject matter jurisdiction" (quoting *People in Interest of Clinton*, 762 P.2d 1381, 1387 (Colo. 1988))).

¶ 19    A less drastic alternative analysis requires a juvenile court to determine which permanency outcome for a child serves the child's best interests.  In the termination context, if a return to home is not possible, the comparison is often between termination and adoption, on the one hand, and, on the other hand, an alternate path to permanency that leaves a respondent's parental rights intact, such as a permanent placement through legal guardianship or an APR, or other planned permanent living arrangements.  § 19-3-702(4)(a)(I)-(V), C.R.S. 2025.

¶ 20    The Department seems to suggest that when assessing whether an APR is an available less drastic alternative, the court must constrain its consideration of an APR to specific, identified individuals.  But the Department does not cite, nor are we aware of, any authority that so constrains the framing of the issue of less drastic alternatives.  Indeed, when a court concludes that termination is in a child's best interests because that child's needs are best met by the permanency that only termination and adoption can provide, for that finding to survive appellate scrutiny, the child does not need to be in a potentially adoptive home, nor do we require that a specific adoptive placement be identified or known to

10

the court at the time of termination. *See People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005) (declining to disturb a juvenile court's rejection of placement with a relative as a less drastic alternative and its finding that termination and adoption were in the children's best interests "whether or not they were ultimately adopted" and notwithstanding that the children were not placed in a potentially adoptive home at the time of the termination hearing).

¶ 21     We are not persuaded that the requirement is any different when it comes to assessing whether an APR is in a child's best interests. In other words, in assessing the less drastic alternative criterion, a juvenile court may consider whether the alternative legal disposition — e.g., an APR — is available and in a child's best interests, even when a specific person has not been identified or the specific terms of a proposed APR are not before the court.

¶ 22     Even though a less drastic alternative to termination is not dependent on a particular out-of-home placement provider, divisions of this court have viewed approvingly a juvenile court's consideration of factors related to the child's current or potential placement provider, including (1) attempts already made by the

11

court or a department to cultivate alternative dispositions to termination, *C.S. v. People in Interest of I.S.*, 83 P.3d 627, 640-41 (Colo. 2004); (2) the identification of persons who could be permanent placement providers under an APR or guardianship, *D.B-J.*, 89 P.3d at 532; (3) a proposed placement provider's understanding of the child's needs and conditions, *id.*; (4) a proposed placement provider's preference for a certain permanency disposition, *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011); and (5) the parent's fitness to care for the child, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38.

¶ 23    In other words, whether a less drastic alternative is available is a distinct consideration from a court's later finding of whether that alternative is in the child's best interests.  And here, the only barrier to an APR identified by the Department and GAL is the child's current placement provider's expressed hesitation or unwillingness to be a party to an APR.  But as mother correctly points out, the current placement provider's expressed preference for adoption does not make an APR unavailable.  Instead, a particular placement provider's willingness to enter into an APR is only one consideration for the juvenile court to weigh to determine

whether an APR would be in the best interests of the child. *See id.* Likewise, the present availability of a specific APR proposal is yet another consideration; indeed, even when a placement provider is willing to enter into an APR with a parent, the court may properly determine that such an arrangement is not the best option for the child and, therefore, not in the child's best interests. *See D.B-J.*, 89 P.3d at 532 (upholding a juvenile court's determination that a proposed placement was not a less drastic alternative to termination based on a finding that the placement provider lacked appreciation of the child's needs and conditions).

¶ 24 Based on the record that was before the juvenile court, we conclude that it was not error for the court to determine in this case that an APR was an available less drastic alternative to termination. *See People in Interest of M.M.*, 726 P.2d 1108, 1124 (Colo. 1986) (determining that the juvenile court's crediting of testimony that a child's need to maintain contact with his parent was secondary to his primary needs of consistent and reliable parenting supported its no less drastic alternative finding); *see also In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence.").

13

## B. The Child's Best Interests Finding

¶ 25 We now turn to whether the record supports that an APR was in the child's best interests. We conclude it does.

¶ 26 In *A.M.*, the supreme court stated that, for a less drastic alternative to be viable, "it must not only be adequate, it must be in the child's best interests." *A.M.*, ¶ 27. In other words, whether a less drastic alternative is available is likely easy to ascertain, but whether it is in the child's best interests involves a complex analysis, often requiring the court to weigh and resolve conflicting evidence and make credibility determinations. *See A.R.*, ¶ 38.

¶ 27 To highlight the complexity and range of what a juvenile court considers when determining whether a less drastic alternative is in the child's best interests, we note that divisions of this court have looked favorably upon juvenile courts resting their best interest determinations on the following findings: (1) it was important for the child to maintain an ongoing relationship with a parent, *see id.*; (2) the child was bonded to the parent or interested in maintaining a relationship, *see People in Interest of E.W.*, 2022 COA 12, ¶ 36, *aff'd sub nom.*, *R.W. v. People In Interest of E.W.*, 2022 CO 51; (3) the child needed permanency, *see People in Interest of Z.M.*, 2020

14

COA 3M, ¶ 30; (4) it was important for the child to maintain relationships with siblings and other biological family members, *see People in Interest of J.L.M.*, 143 P.3d 1125, 1127 (Colo. App. 2006); and (5) the child's developmental needs might preclude a long-term placement with siblings, *see People in Interest of Z.P.*, 167 P.3d 211, 215 (Colo. App. 2007). With this in mind, we turn to the facts of this case as found by the juvenile court.

¶ 28    At the time of the termination hearing, the child in this case was ten years old.

¶ 29    The child's placement provider testified that mother and the child had maintained a strong relationship throughout the dependency case. The placement provider testified that the child and mother "need to have a relationship with each other" and that her "ultimate goal" would be for mother to take care of the child again one day, even if the case ended in a termination.

¶ 30    The family time facilitator described a robust relationship between the child and mother. The facilitator testified that mother was appropriate in her engagement and redirection of the child when necessary. The facilitator also described mother's unique insight into the child's feelings and experiences. The facilitator

further testified that mother was able to engage the child to express his feelings and put "her own needs last and direct[] her efforts towards comforting [the child]," particularly when he was upset after overhearing comments about the case direction and about mother. The family time facilitator advocated for an expansion of family time and the addition of family therapy.

¶ 31 The caseworker testified that the child advocated for more and less restrictive time with mother, a request approved by the Department. The caseworker testified that the child was asking to return to mother's care at least part-time and had consistently reported feeling safe with mother.

¶ 32 Mother's expert in the mental and emotional impact of permanency outcomes, childhood trauma, and child development testified that a termination outcome for a ten-year-old child bonded to their mother would be "catastrophic." The expert opined that the child's age was a significant factor in the potential harm caused by a termination because he "has the knowledge, experience, and opinions and feelings and memories associated with" mother. The expert opined that a child may have dysregulated or extreme behaviors after being told that adoption is a possible outcome, in

part because a child's "psychological wellbeing hinges on his opportunity to maintain that . . . connected bond with his mother." Finally, the expert explained that there was "no reasonable certainty" that such a connected bond would be maintained through termination and adoption, but "there is that guarantee through a well-constructed and appropriate APR."

¶ 33 The Department responds by pointing to evidence presented at the hearing supporting a conclusion that the child needs permanency. Specifically, the Department notes the caseworker's opinion that the child felt "in limbo and [wa]s confused about where he is going to be." As we have said, the need for permanency is but one consideration of many for the court to weigh when determining whether a less drastic alternative is available and is in the child's best interests. It is for the juvenile court, however, to weigh the evidence, and we cannot substitute our judgment for the juvenile court's determination. *See A.J.L.*, 243 P.3d at 256; *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29; *M.B.*, 70 P.3d at 627.

¶ 34 We acknowledge that this record could support a contrary outcome, but we must defer to the juvenile court's weighing of the conflicting evidence, as we would if the court had found that the

less drastic alternative, while available, was not in the child's best interests and, thus, had granted the Department's motion to terminate. Indeed, even a similar record with the passage of time or subsequent motions for termination may compel the same fact finder to reach a different outcome.

¶ 35 But when, as was the case here, the juvenile court finds that a less drastic alternative "is in the child's best interests, it should deny the termination request." *A.M.*, ¶¶ 32, 37. And because there is record evidence supporting the juvenile court's finding that an APR was a less drastic alternative to termination and was in the child's best interests, we won't disturb the juvenile court's judgment.

## V. Conclusion

¶ 36 The juvenile court's order denying the Department's motion to terminate and requiring the dependency and neglect action to remain open is therefore affirmed.

JUDGE GROVE concurs.

JUDGE WELLING specially concurs.

18

JUDGE WELLING, specially concurring.

¶ 37    I am fully on board with the majority opinion in its rationale and conclusion.  I write separately to raise a concern regarding the proper standard of review that appellate courts should apply when reviewing a juvenile court's less drastic alternative findings, particularly the question of whether the less drastic alternative is in the child's best interests.  As we noted in Part II of the majority opinion, *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶¶ 15, 44, provides that we review a juvenile court's less drastic alternative findings, including whether the less drastic alternative is in the child's best interests, for clear error.  *Supra* ¶¶ 9-10.

¶ 38    We are of course bound by supreme court precedent, *see In re Estate of Ramstetter*, 2016 COA 81, ¶ 40, and, therefore, we must review the juvenile court's less drastic alternative finding for clear error as *A.M.*, ¶¶ 15, 44, requires.  While the supreme court reaffirmed the clear error standard for a juvenile court's less drastic alternative ruling in *People in Interest of B.H.*, 2021 CO 39, ¶ 80, it also summed up its ruling in that case by stating, "we see no *abuse of discretion* by the district court when it concluded that there were no less drastic alternatives to termination," *id.* at ¶ 4 (emphasis

added), leaving some room for questioning whether the court applied a clear error or abuse of discretion standard in that case.

¶ 39    I think there is a strong case to be made that an abuse of discretion standard should apply to a juvenile court's less drastic alternative finding. After all, the clear error standard is so deferential that appellate courts will only reverse "'if there is no evidence in the record' to support the . . . court's factual findings." *Galiant Homes, LLC v. Herlik*, 2025 COA 3, ¶ 22 (quoting *Byerly v. Bank of Colo.*, 2013 COA 35, ¶ 32). I am concerned that this standard may render a juvenile court's less drastic alternative findings virtually unreviewable, particularly when a court may reject some or all of a witness's testimony, *see In re Marriage of Thorburn*, 2022 COA 80, ¶ 50 (a court can believe all, part, or none of a witness's testimony, even if uncontroverted).

¶ 40    At the very least, I wonder whether the availability of the less drastic alternative should be treated as a factual finding reviewed for clear error, while the less drastic alternative being in the child's best interests should be reviewed for an abuse of discretion. While *A.M.*, ¶¶ 15, 44, treated best interests of the child as a factual finding reviewed for clear error, the supreme court and divisions of

this court have routinely reviewed best interests of the child findings in the domestic relations context for an abuse of discretion. *See, e.g., In re Marriage of Ciesluk*, 113 P.3d 135, 148 (Colo. 2005) (reviewing "[a] best interests determination under subsection 14–10–129(2)(c)," C.R.S. 2004, "for an abuse of discretion"); *In re Marriage of Pawelec*, 2024 COA 107, ¶ 52 (Where the trial court ruled that the child could move with the father out of state, the appellate court reviewing the order stated, "[W]e perceive no abuse of discretion in the court's consideration and resolution of the best interests factors.").

¶ 41    All of this said, although in the majority we reviewed the juvenile court's order for clear error, I would also conclude that the court's finding that there was a less drastic alternative to termination available that was in the child's best interests was not an abuse of discretion. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *See People in Interest of E.B.*, 2022 CO 55, ¶ 14. The juvenile court here provided a well-reasoned analysis that, despite the current placement provider not being amenable to an APR, an APR was in the child's best interests. It

21

based this conclusion on appropriate best interest factors, including placing great weight on this child's need to maintain a relationship with mother and the benefits to him of doing so. Thus, I don't discern an abuse of discretion, much less clear error, by the juvenile court.