25CA1645 Peo in Interest of KS 02-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1645
Adams County District Court No. 24JV30106
Honorable Emily Lieberman, Judge

The People of the State of Colorado,

Appellee,

In the Interest of K.S., Jr., a Child,

and Concerning M.T. and K.S., Sr.,

Appellants.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 5, 2026

Heidi Miller, County Attorney, Emily Platt, Assistant County Attorney, Westminster, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant M.T.

One Accord Legal, LLC, Katelyn B. Parker, Greenwood Village, Colorado, for Appellant K.S., Sr.

¶ 1     In this dependency and neglect action, M.T. (mother) and K.S. Sr. (father) appeal the judgment terminating their parent-child legal relationships with K.S. Jr. (the child). We affirm.

## I.     Background

¶ 2     The Adams County Human Services Department filed a petition in dependency and neglect when the child was five weeks old. The petition alleged that mother and the child were hospitalized after mother reported a relapse on alcohol and made threats against herself and the child.

¶ 3     The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for both parents. After mother again relapsed during an attempted return home, the Department moved to terminate both parents' parental rights. More than a year after the petition was filed, the juvenile court terminated mother's and father's parental rights following a contested hearing.

## II.     Analysis

### A.     Mother's Contentions

¶ 4     Mother contends that the juvenile court erred by (1) finding that she could not become fit within a reasonable time and

(2) concluding that an allocation of parental rights (APR) was not a less drastic alternative to termination.

### 1. Fitness Within a Reasonable Time

¶ 5 Mother first contends that the juvenile court erred by finding that she was unlikely to become fit within a reasonable time. We are not persuaded.

### a. Standard of Review and Applicable Law

¶ 6 An unfit parent is one whose condition or conduct renders them unable to give a child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care "requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs." *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 7 "In determining whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. What constitutes a reasonable time is fact-specific

2

and must be determined by considering the physical, mental, and emotional conditions and needs of each particular child. *Id.* at ¶ 25. A *reasonable time* is not an indefinite time. *Id.* And even when a parent has made recent progress on a treatment plan, the court is not required to give the parent additional time to comply. *See id.* at ¶¶ 24-25.

### b. The Record Supports the Court's Conclusion That Mother Had a Reasonable Time to Become Fit

¶ 8 Mother contends that the juvenile court's conclusion that she could not reunify with the child in a reasonable time "is not supported by the record given [her] significant progress in substance abuse treatment and her ability to achieve sobriety."

¶ 9 We disagree with mother's argument because the record supports the juvenile court's findings that mother was not fit and was unlikely to become fit within a reasonable period of time.

¶ 10 The court agreed that mother had demonstrated the ability to *achieve* sobriety but found that the underlying child protection concern was "the ability to *maintain* that sobriety in the long-term," which ability she hadn't demonstrated during the case. (Emphasis added.) The court found that there were "changes in sobriety

3

status" but not in "the chronic condition of [mother's] struggle with sobriety." In other words, mother demonstrated a long-standing pattern of achieving sobriety and then returning to use. The court found that "there's no unreasonable period of time for you, [mother] to [maintain sobriety] for yourself . . . but for [the child] even a few additional months in an [expedited permanency planning] case, for a fifteen-month-old-child who was removed at five weeks old, is not reasonable."

¶ 11    To be sure, mother's ability to achieve sobriety was uncontested. Mother's longest period of sobriety during the case was around 100 days, and she achieved and maintained sobriety during her stays at an inpatient program and sober living home. Accordingly, the court approved a transition plan for the child to reside with mother in a kinship home. And at the time of the termination hearing, mother testified that she was residing in a different sober-living home and had achieved thirty-four days of sobriety. She testified that she was also meeting with an individual therapist for the first time.

¶ 12    However, mother also testified that, once the child had transitioned to reside with mother in the kinship home, she

4

maintained sobriety for only three days before she relapsed and left the child and the kinship home they shared. She further agreed that she had not completed any mental health or substance dependence assessments or engaged in outpatient substance dependence treatment.

¶ 13 Further, the first ongoing caseworker testified that she did not have concerns about mother when mother was in treatment; her concerns began "once those support systems [were] removed" when mother transitioned into community settings. The second ongoing caseworker offered similar testimony, opining that the main concern was mother's ability to stay sober in the community, rather than getting sober while in intensive treatment. The caseworker also testified that mother historically did not follow recommendations for ongoing treatment when she was discharged from inpatient services or sober living and had not demonstrated the ability to be sober in the community at any point during the dependency action.

¶ 14 When a child is under six years old at the time the petition is filed, the action is subject to the expedited permanency planning provisions, and the court must place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S.

2025.  Here, the child was fifteen months old at the time of the termination hearing and — aside from the few days he spent in the kinship home where mother was living — had been in out-of-home placement since he was five weeks old.  The second ongoing caseworker — qualified as an expert in social work with an emphasis in child protection — opined that the child experienced "significant" trauma in those few days he was placed with mother in the kinship home.  The caseworker also opined that the child needed caregivers who could consistently meet his needs and provide stability and structure.

¶ 15    Accordingly, given this record, we discern no error in the court's findings that mother was unfit and unlikely to become fit within a period of time that was reasonable for the child.

### 2.    Allocation of Parental Responsibilities Was Not a Less Drastic Alternative

¶ 16    Next, we reject mother's contention that the juvenile court "failed to adequately consider" an APR to the child's placement providers as a less drastic alternative to termination.

¶ 17    The juvenile court must consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship.

6

*People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, the court must base its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3), C.R.S. 2025. The court may also consider a wide range of other factors, including whether an ongoing relationship with the parent would be beneficial or detrimental to the child. *People in Interest of A.R.*, 2012 COA 195M, ¶ 38.

¶ 18 We review a juvenile court's less drastic alternative findings for clear error. *People in Interest of H.L.B.*, 2025 COA 86, ¶ 10. It is for the juvenile court as the trier of fact to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

¶ 19 Here, the record supports the conclusion that the juvenile court expressly considered granting an APR to the placement providers as a less drastic alternative to termination. The court found that, because of the pattern of mother's use and nonuse of alcohol and substances, an APR would not provide the level of permanency that only termination and adoption could provide for the child. The court "weigh[ed] heavily" the age of the child, who

was fifteen months old at the time of termination and remained in out-of-home placement most of his young life. The court also properly considered mother's unfitness in determining that there was not a less drastic alternative to termination. *A.R.*, ¶ 38 (noting that the less drastic alternative determination is "influenced by a parent's fitness to care for [the] child's needs").

¶ 20 Mother points to the fact that she was safe and appropriately participated with the child when she attended family time. Although mother's conduct in supervised family time during periods of sobriety is not in dispute, that fact does not necessarily demand, as mother seems to suggest, a finding that preserving the child's legal relationship with her would be in the child's best interests. And in any event, a reviewing court may not reweigh the evidence or substitute its judgment for that of the juvenile court merely because there might be evidence supporting a different result. *See People in Interest of A.J.L.*, 243 P.3d 244, 256 (Colo. 2010). We conclude that the juvenile court did not err by concluding that an APR was not a less drastic alternative to termination.

## B.  Father's Contentions

### 1.  Preservation of Father's Claims Related to the Statutory Criteria for Termination

¶ 21    Father did not appear at the termination hearing.  Father's counsel reported that father had asked "to present no defense today.  So, [father's attorney] will not be making a statement or asking questions.  [Father] did want the court to know he feels like he is not in a place to care for [the child] right now."  The juvenile court found that father was not contesting the termination of his parental rights.

¶ 22    Father now claims that the juvenile court erred by finding that (1) it adopted an appropriate treatment plan for him; (2) the Department made reasonable efforts to rehabilitate him; and (3) there was no less drastic alternative to termination.

¶ 23    Though father concedes that he did not preserve these issues, he urges this court to nevertheless address his claims under the miscarriage of justice exception to the preservation requirements.  *See People in Interest of E.S.*, 2021 COA 79, ¶ 14.  If an error by the trial court involves a miscarriage of justice, we may consider an unpreserved issue for the first time on appeal.  *In re R.G.B.*, 98 P.3d

958, 959 (Colo. App. 2004). The miscarriage of justice exception has a high bar and narrow scope. *See People in Interest of M.B.*, 2020 COA 13, ¶¶ 23-24. Accordingly, we have recognized the exception in "rare cases, involving unusual or special circumstances . . . to prevent an unequivocal and manifest injustice." *In re E.R.S.*, 2019 COA 40, ¶ 38.

¶ 24 In support of his argument, father only asserts — though correctly — that "[t]ermination of parental rights is a decision of paramount gravity." But father does not claim, and we cannot discern, any unusual or special circumstances surrounding the termination of his parental rights in this case. Therefore, we decline to apply the miscarriage of justice exception to review his unpreserved claims here.

¶ 25 Father also asserts that we should follow the reasoning of some divisions of this court that have addressed specific arguments regarding the appropriateness of a treatment plan and reasonable efforts, even when those arguments were not raised before the termination of parental rights hearing. *See People in Interest of K.B.*, 2016 COA 21, ¶ 21 (holding that the trial court erred by not making explicit findings that the treatment plan was appropriate

when mother raised the issue for the first time at the termination hearing); *see also People in Interest of S.N-V.*, 300 P.3d 911, 913 (Colo. App. 2011) (holding that the juvenile court must make statutory findings even when a parent agreed at the dispositional phase to the treatment plan). But in our view, father's circumstance is different than those presented by the cases he asks us to follow — cases where parents made objections at the termination hearings. By presenting no defense, father failed to meet even this minimal preservation requirement. *People in Interest of T.E.R.*, 2013 COA 73, ¶ 30 (failing to take a position on an issue presented to a juvenile court is insufficient to preserve it for review). Moreover, father didn't just fail to raise the issues in the juvenile court, instead he affirmatively decided not to challenge the termination. *See D.P.*, 160 P.3d at 355-56 (noting that statutory rights in a dependency and neglect proceeding are subject to waiver).

¶ 26      Lastly, father contends that mother's objection to the finding that there was no less drastic alternative to termination is sufficient for him to bring the same claim. We decline to address this preservation issue because mother properly raised less drastic

alternatives in her appeal, and we addressed and rejected the merits of her argument, *supra* Part II.A.2. *See People in Interest of R.R.*, 607 P.2d 1013, 1015 n.2 (Colo. App. 1979); *see also L&R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where outcome would not change).

¶ 27 We therefore decline to further address father's treatment plan, reasonable efforts, and less drastic alternatives contentions.

### 2. ICWA Due Diligence

¶ 28 Father contends that the juvenile court failed to follow the due diligence requirements in Colorado's statute implementing the Indian Child Welfare Act (ICWA). We're not persuaded.

¶ 29 As contemplated by the statute in effect at the time of the termination hearing, due diligence required the Department to "earnestly endeavor to investigate the basis" for an assertion that the child may be an Indian child, contact any family members or others specifically identified by a parent as having knowledge of Indian heritage, and learn if there is further information that would help the court in determining if there is a reason to know that the

child is an Indian child. *H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 57 (citing § 19-1-126(3), C.R.S. 2024[1]).

¶ 30    Here, after mother made a general claim of heritage, the Department sent notices to the identified tribes. Father does not claim that those notices were deficient. Instead, he claims that the juvenile court erred by not (1) clearly ordering the Department to complete due diligence; (2) requiring the Department to document specific due diligence efforts; or (3) making written findings pertaining to due diligence.

¶ 31    Father does not assert that he preserved this issue. Instead, he appears to claim that no preservation was necessary because "the notice requirements of the ICWA serve the interests of the Indian tribes and, therefore, cannot be waived by a parent and may be raised for the first time on appeal." *People in Interest of J.O.*, 170 P.3d 840, 842 (Colo. App. 2007).

¶ 32    We need not decide whether these claims can be raised for the first time on appeal because father cannot prevail on them here in

---

[1] After the order issued in this case, section 19-1-126(3), C.R.S. 2024, was repealed and relocated to section 19-1.2-107(3)(d), C.R.S. 2025. *See* Ch. 338, sec. 1, § 19-1-126, 2025 Colo. Sess. Laws 1179-81.

any case. Father does not assert — and the record does not suggest — that he or mother are members of an Indian tribe or the child is an enrolled member of any tribe. *See* 25 U.S.C. § 1903(4) (defining an Indian child as a "person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"). Given this circumstance, any errors in the juvenile court's due diligence findings are harmless because there is no reason to believe that the child is an Indian child. *See H.J.B.*, ¶¶ 64-65; *see* C.R.C.P. 61 (noting that an appellate court may disregard any error "which does not affect the substantial rights of the parties"); *see also People in Interest of M.V.*, 2018 COA 163, ¶ 66 ("An error affects a substantial right if it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.").

## III. Disposition

¶ 33    The judgment is affirmed.

JUDGE FOX and JUDGE SULLIVAN concur.