25CA1732 Peo in Interest of ZLTRC 06-25-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1732
City and County of Denver Juvenile Court No. 23JV30535
Honorable Laurie Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.L.T.R.C., a Child,

and Concerning A.N.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HARRIS
Tow and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

---

Miko Brown, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, A.N.C. (mother) appeals the judgment terminating her parent-child legal relationship with Z.L.T.R.C. (the child).  We affirm.

## I.    Background

¶ 2    In August 2023, the Denver County Department of Human Services filed a petition in dependency and neglect concerning the then-newborn child.  The Department alleged concerns about mother's mental health and substance use, noting that the child tested positive for several illegal substances at birth.  The Department also noted that there was an open dependency and neglect case involving mother and her five older children in another county.

¶ 3    The juvenile court granted the Department temporary legal custody of the child, and he was placed in foster care.  Thereafter, mother agreed to a deferred adjudication and a treatment plan that required her to address her substance use issues, engage in mental health treatment, demonstrate stability, attend family time, and cooperate with the Department.  Six months later, the Department moved to revoke the deferred adjudication, and the court granted that motion.

¶ 4    In April 2025, the Department moved to terminate mother's parental rights. Four months later, the court held a termination hearing at which mother did not appear. The caseworker testified that in the four months leading up to the hearing, mother had not attended family time, and her communication with the Department had been "sporadic" and "minimal." The caseworker also testified that mother had not complied with the requirements of her treatment plan. Two years after the petition was filed, the juvenile court granted the Department's termination motion.

¶ 5    Mother appealed. Initially, this court ordered a limited remand after the Department conceded that it had not satisfied its due diligence obligations under section 19-1.2-107(4), C.R.S. 2025, which is part of Colorado's statutory framework implementing the Federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963. On remand, the Department conducted further efforts to comply with federal and state ICWA requirements. Following those efforts, the juvenile court determined that the Department had satisfied its due diligence obligations and that the court did not know or have reason to know that the child is an Indian child. Mother then filed a reply brief indicating that she was

satisfied with the Department's efforts and no longer challenged the court's ICWA determination.

¶ 6 We now address mother's remaining contentions.

## II.     Best Interests of the Child

¶ 7 Mother contends that termination of her parental rights was not in the child's best interests because the child was not placed in a permanent home at the time of termination. We are not persuaded.

### A.     Applicable Law and Standard of Review

¶ 8 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 9 The termination criteria require the juvenile court to give primary consideration to the child's physical, mental, and emotional needs. § 19-3-604(3); *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 20. The controlling issue in termination proceedings is the

determination of what will best serve the interests and welfare of the child. *A.M.*, ¶ 20.

¶ 10 Whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. We review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *Id.*

## B. Analysis

¶ 11 The juvenile court found that although the child was not in a permanent home at the time of the termination hearing, termination was nonetheless in his best interests because he needed the permanency that adoption would provide based on his "very young age and [his] medical and developmental concerns." The court also found that preserving the parent-child relationship was not in the child's best interests because mother did not acknowledge the child's high needs or developmental delays and her own unaddressed mental health issues adversely affected the child.

¶ 12 The record supports the juvenile court's findings. Both the caseworker and the family time supervisor testified about the child's needs, which were higher than those of an average two-year-old.

Specifically, the child had a genetic abnormality and "significant developmental delays" that required him to attend speech therapy, physical therapy, and occupational therapy, and to receive nutrition services. The caseworker testified that although the child was receiving these services, he was not making progress in some areas, and his special needs had increased throughout the case. The child had speech regression, choked easily when he was eating, was uninterested in playing with toys or other children, chose to crawl despite knowing how to walk, vomited when he was upset, and slept significantly more than a typical two-year-old.

¶ 13 The caseworker said that mother "regularly denied or refused to acknowledge [the child's] developmental delays." The family time supervisor similarly testified that mother did not want updates or feedback about the child's medical issues and that she either blamed the foster parents for the child's developmental delays or denied that the delays existed. The family time supervisor recounted that, on multiple occasions, mother became escalated during family time, which caused the child to become dysregulated. In those instances, mother was unable to calm the child down or ensure his safety.

¶ 14    As an expert in social casework with an emphasis in child protection, the caseworker opined that mother's "denial" of the child's "high emotional and developmental needs" hindered her ability to be a safe caregiver for the child or develop a positive bond with him. Based on these parenting deficiencies and the fact that the case had been open for over two years, the caseworker opined that termination was in the child's best interests even though the Department had not yet identified a potential adoptive home.

¶ 15    Mother argues that the mere fact that the child was not in a permanent home is sufficient to undermine the propriety of the court's finding that termination was in the child's best interests. We disagree. Mother does not point us to any legal authority indicating that a child must be placed in a permanent home before a court may terminate a parent's rights. And, to the contrary, a division of this court recently confirmed that

> when a court concludes that termination is in a child's best interests because that child's needs are best met by the permanency that only termination and adoption can provide . . . the child does not need to be in a potentially adoptive home, nor do we require that a specific adoptive placement be identified or known to the court at the time of termination.

*People in Interest of H.L.B.*, 2025 COA 86, ¶ 20 (*cert. granted* Feb. 2, 2026); *see also People in Interest of T.E.M.*, 124 P.3d 905, 911 (Colo. App. 2005) (affirming termination of a parent's rights when the juvenile court found that termination and adoption were in the children's best interests "whether or not they were ultimately adopted" and notwithstanding that the children were not placed in a potentially adoptive home at the time of the termination hearing).

¶ 16 Accordingly, we discern no error in the juvenile court's determination that termination of mother's parental rights was in the child's best interests.

### III. Less Drastic Alternatives

¶ 17 Mother also contends that the juvenile court erred by finding that there was no less drastic alternative to termination. She argues that the Department failed to timely investigate the child's maternal aunt as a potential placement option and that an allocation of parental responsibilities (APR) to maternal aunt was a viable less drastic alternative to termination. We discern no error.

### A. Applicable Law and Standard of Review

¶ 18 Consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination. *A.M.*, ¶ 40. In

analyzing less drastic alternatives, the juvenile court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. The court may also consider other factors, including whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent's fitness to care for the child. *People in Interest of A.R.*, 2012 COA 195M, ¶ 38.

¶ 19 For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *A.M.*, ¶ 27. Long-term or permanent placement with a family member, short of termination, may not be in a child's best interests if it does not provide the permanence assured by adoption or otherwise meet that child's needs. *A.R.*, ¶ 41.

¶ 20 "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Accordingly, when a juvenile court considers a less drastic alternative but instead finds that termination is in a child's best interests, we are bound to affirm the court's decision so long as the

8

record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B. Analysis

¶ 21     The juvenile court considered less drastic alternatives to termination but concluded that no less drastic alternative would meet the child's physical, emotional, and psychological needs. As discussed above, the court found that preserving the parent-child relationship was not in the child's best interests, and that finding was supported by the record.

¶ 22     Still, mother argues that the court's less drastic alternatives finding was erroneous because the Department had recently started investigating the maternal aunt as a potential placement option, and an Interstate Compact on the Placement of Children (ICPC) home study for maternal aunt was still pending at the time of termination. According to mother, the child's aunt was a viable less drastic alternative, but the court rejected that option because she was not immediately available as a placement.

¶ 23     To an extent, mother's argument conflates placement options with less drastic alternatives. While placement preferences are relevant when determining which among a choice of placements is

in the child's best interest, "a less drastic alternative analysis considers whether *any* placement, short of termination, would be in the child's best interest." *A.R.*, ¶ 44. And here, the juvenile court categorically rejected *any* APR, finding that preservation of the parent-child relationship was not in the child's best interests and that termination and adoption were.

¶ 24 Consequently, mother's complaint that the Department failed to "timely" investigate the child's aunt as a potential placement option misses the mark. For one thing, mother provided the aunt's contact information just two months before the termination hearing. At that point, the caseworker contacted maternal aunt to determine if she was a placement option and initiated an ICPC home study for her. Mother does not explain how this timeline establishes an "untimely" investigation. *See People in Interest of Z.P.*, 167 P.3d 211, 215 (Colo. App. 2007) (explaining that a department is not obligated to "independently identify and evaluate other possible placement alternatives").

¶ 25 But more importantly, the fact that maternal aunt was willing to accept an APR if the ICPC home study was approved did not mean that an APR was in the child's best interests. The court

heard the caseworker's testimony about the potential availability of an APR to maternal aunt but still found, based on the child's needs, that termination was in the child's best interests such that no less drastic alternative existed. The court's findings are not clearly erroneous, so we cannot disturb them on appeal. *A.M.*, ¶¶ 48-49; *see also People in Interest of K.L.W.*, 2021 COA 56, ¶ 62 (it is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court).

¶ 26　　In sum, we conclude that the juvenile court properly considered an APR to maternal aunt and its determination that termination, not an APR, was in the child's best interests is supported by the record. Therefore, reversal is not warranted. *See B.H.*, ¶ 80.

IV.　Disposition

¶ 27　　The judgment is affirmed.

JUDGE TOW and JUDGE BROWN concur.

11