25CA1836 Peo in Interest of DJC 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1836
El Paso County District Court No. 23JV30679
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.J.C., a Child,

and Concerning B.W. and M.C.,

Appellants.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Kenneth R. Hodges, County Attorney, Melanie E. Gavisk, Senior County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant B.W.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant M.C.

¶ 1    In this dependency and neglect action, B.W. (mother) and M.C. (father) appeal the judgment terminating their parental rights to D.J.C. (the child). They each contend that they received ineffective assistance of counsel and that the juvenile court erred by finding that the El Paso County Department of Human Services (the Department) made reasonable efforts to rehabilitate them. Father also contends that the juvenile court erred by finding that he could not become fit within a reasonable time. We disagree with each of these claims and affirm the judgment.

## I.    Background

¶ 2    The Department filed a petition in dependency and neglect alleging that the child tested positive for methamphetamines at birth. The petition further alleged that mother and father had an ongoing dependency and neglect action with the child's two older sisters.

¶ 3    The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for both parents. The Department later moved to terminate both parents' parental rights. Two years after the petition was filed, the juvenile court terminated mother's and father's parental rights after a contested hearing.

1

## II.    Ineffective Assistance of Counsel

¶ 4     Mother and father contend that their respective counsel were ineffective because they failed to subpoena the Department caseworker to testify at the termination hearing.  We disagree.

### A.    Applicable Law

¶ 5     A parent has a statutory right to the effective assistance of counsel in dependency and neglect proceedings.  §§ 19-1-105(2), 19-3-202(1), C.R.S. 2025; *A.R. v. D.R.*, 2020 CO 10, ¶ 47.  A parent may raise an ineffective assistance claim for the first time on appeal.  *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

¶ 6     To prevail on a claim of ineffective assistance of counsel, a parent must show that (1) "counsel's performance was outside the wide range of professionally competent assistance," and (2) "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *A.R.*, ¶¶ 48, 60; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "If the parent fails to establish either prong of this test, the claim fails."  *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 7    Applying this standard, we remand the case for further factual findings only if the parent's allegations are "sufficiently specific to constitute a prima facie showing of ineffective assistance of counsel." *A.R.*, ¶ 63.  If the allegations lack sufficient specificity or do not meet this standard, we may summarily deny the claim.  *Id.*

## B.    Additional Background

¶ 8    The caseworker was placed on administrative leave shortly before the termination hearing began.  Counsel for both parents requested a continuance and expressed concern that his leave might be tied to his performance in the case.  Each attorney represented that they intended to subpoena the caseworker and asked the Department to provide information so he could be served at home.

¶ 9    Rather than grant a continuance, the juvenile court set a second hearing date and stated that either or both parents could subpoena the caseworker "if they want[ed] to call him on rebuttal."

¶ 10    The hearing ultimately spanned three days over three months.  Neither parent called the caseworker.  Beyond the brief discussion on the first day of trial, the record is silent as to any further efforts by the parents' counsel to subpoena him.

¶ 11     The caseworker's supervisor, however, testified on all three days of the hearing.  As relevant here, the supervisor testified that the Department had (1) received a report that the caseworker falsified records about contacts with children; (2) audited all the caseworker's cases; and (3) uncovered fraudulent activity in six of those cases.  The Department did not find fraudulent activity in this case, but the audit revealed that the caseworker had failed to meet obligations under several administrative regulations promulgated by the Colorado Department of Human Services.  *See* Dep't of Hum. Servs. Rules 7.301.22(B) and 7.304.64(A), 12 Code Colo. Regs. 2509-4.  Specifically, the supervisor testified that the caseworker had failed to regularly communicate with treatment providers, submit family time plans to the court, or hold regular staffing and family engagement meetings.

¶ 12     The caseworker was terminated from his employment the day before the second day of the termination hearing.

### C.     Analysis

¶ 13     Both parents contend that there was "no justifiable reason not to subpoena" the caseworker because his testimony was needed "to address and resolve concerns about the caseworker's conduct,

4

whether it impacted this case, and the completeness of the record." We need not consider the merits of parents' complaints about their attorneys' performance, however, because we conclude that the parents failed to allege with sufficient specificity that they were prejudiced. *See C.B.*, ¶ 6.

¶ 14 To show prejudice, a parent must demonstrate a reasonable probability that, but for counsel's deficient performance or unprofessional errors, the outcome of the proceeding would have been different. *A.R.*, ¶ 60. To obtain a remand for an evidentiary hearing, the parent must allege facts with sufficient specificity — including, for example, the substance of any witness's testimony and how that testimony would have changed the result of the proceeding. *People In Int. of Ferguson*, 2025 COA 82, ¶ 38 (citing *People In Int. of E.D.*, 2025 COA 11, ¶ 7). If the parent's allegations lack sufficient specificity, we may summarily deny the ineffective assistance claim. *C.H.*, 166 P.3d at 291.

¶ 15 Even assuming that trial counsel's representation fell below an objective standard of reasonableness, both parents have failed to allege facts that, if proven, would demonstrate prejudice. Counsel for both parents subpoenaed providers beyond those called by the

Department.  In addition to the caseworker's supervisor, counsel elicited testimony from father's substance dependence and supervised family time providers, and from mother's life skills, therapeutic family time, domestic violence treatment, and sober living providers.  Neither parent explains with any specificity what additional information the caseworker would have provided had he been subpoenaed.

¶ 16    Critically, neither parent explains how direct testimony from the caseworker about his own misconduct would have produced a different outcome.  The court, based on evidence presented by parents' counsel, stated that it was "furious with" the caseworker due to his clear misconduct.  Yet the court also found the supervisor credible in her explanation of the Department's audit and found the treatment providers credible when they "came in here and gave us the long and short."  Thus, even without the caseworker's testimony, the juvenile court had the information it needed "to address and resolve concerns about the caseworker's conduct, whether it affected this case, and the completeness of the record."

¶ 17    Because the parents' allegations are not sufficiently specific or compelling to constitute a prima facie showing of ineffective assistance of counsel, we deny their claim.  *C.H.*, 166 P.3d at 291.

## III.    Reasonable Efforts

¶ 18    Next, both mother and father contend that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate them.  We disagree.

### A.    Standard of Review

¶ 19    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2025; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 20    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  "We review the juvenile

court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. But we review de novo the juvenile court's legal conclusions based on those facts. *See id.* In particular, the ultimate determination of whether the Department provided reasonable efforts is a legal conclusion we review de novo. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

¶ 21     It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

B.     Applicable Law

¶ 22     Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), a department must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. Reasonable efforts means the "exercise of diligence and care" for a child who is in out-of-home placement, and the reasonable efforts standard is

8

satisfied when services are provided in accordance with section 19-3-208. § 19-1-103(114).

¶ 23 The services that "must be available and provided" as determined by individual case planning include: screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services for parents with children in out-of-home placement; and placement services including foster care and emergency shelter. § 19-3-208(2)(b). Additional services may be required if funding is available, including transportation, childcare, diagnostic and mental health services, drug and alcohol treatment services, and family support services. § 19-3-208(2)(d).

¶ 24 Whether a department made reasonable efforts should be "measured holistically." *People in Interest of E.D.*, 2025 COA 11, ¶ 11. A parent is ultimately responsible for using the services offered by a department, and the juvenile court "may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts." *Id.* at ¶ 12.

## C. The Caseworker's Misconduct Did Not Foreclose a Finding of Reasonable Efforts

¶ 25 Both parents claim the caseworker's misconduct should have led the juvenile court to find that the Department failed to make reasonable efforts.

¶ 26 But the juvenile court found that the Department made reasonable efforts despite the caseworker's misconduct. The court found, with record support, that the Department maintained regular contact with both parents; provided gas and phones; offered to pay for mother's sober living upon completion of inpatient treatment; paid for repairs on father's truck; facilitated family time; and sent out "lots of referrals" for services, benefits, and resources for both parents. The court also found that "reasonable efforts were tempered by the parents' inability, unwillingness to engage" in services, and their decision to live far outside of town. Neither parent contests these factual findings.

### 1. Father's Reasonable Efforts Claims

¶ 27 Father contends that the caseworker's "work on this case should not be accepted to withstand a clear and convincing burden." The juvenile court, however, made clear that it did not

rely on the caseworker's work — his notes or representations to others — in making its decision. Father also asserts that he was unable to complete treatment "due to communication issues and case mismanagement." The record belies this claim. Father's treatment provider established that father was discharged unsuccessfully — after consultation with the caseworker — because of his failure to consistently attend treatment or participate in required urinalysis testing. Father further claims that the caseworker failed to schedule regular family team meetings. Section 19-3-208, however, does not require family team meetings or case management. Moreover, father does not explain — and we cannot discern — how family team meetings would have made a difference when father himself testified that he did not follow through with treatment and simply "forgot to do the class" that he was referred to.

¶ 28     Father also claims that the Department failed to make reasonable efforts because it did not support family time in the community or with a third-party supervisor. The record suggests otherwise. Father offered uncontested testimony that he regularly saw the children for six hours a week at a supervision center and in

the community. The juvenile court further found, with record support, that the Department attempted to use third-party supervisors for father's family time but discontinued the arrangement because the supervisors were not following the rules or being protective of the children.

¶ 29   Father also claims that his family time "remained stagnated" and should have expanded beyond the supervised level. The level of supervision for family time, however, is within the juvenile court's purview, not the Department's. *People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005) (Family time orders are always "subject to the continuing supervision and review by the trial court, which, in the final analysis, retains ultimate decision-making authority in the case."). Moreover, father never asked the juvenile court to liberalize his family time. In any event, the court found, with record support, that it "just couldn't liberalize and expand time because, well, we still are concerned about his sobriety."

¶ 30   We therefore discern no error in the juvenile court's finding that the Department made reasonable efforts to rehabilitate father, notwithstanding the caseworker's misconduct.

## 2. Mother's Reasonable Efforts Claims

¶ 31 Mother contends that "through the inaction of the caseworker," the Department "did not meet its most basic standards for case management, as laid out in Volume 7." The caseworker's failure to meet those standards was uncontested.

¶ 32 Section 19-3-208 — not the Department's regulations — identifies the services required to satisfy the reasonable efforts obligation. *See People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011); *see also* § 19-3-208(2)(b) (outlining required services); § 19-3-208(2)(d) (identifying additional services required if sufficient funding is available). Nothing in section 19-3-208 requires the Department to make monthly contacts with treatment providers, provide comprehensive case management services, or facilitate regular family engagement meetings. Mother cites no legal authority for her suggestion that a caseworker's failure to provide these particular services constitutes a failure of reasonable efforts.[1]

---

[1] To the extent father had concerns about the caseworker's conduct, the Children's Code and Department regulations provide ways to address such concerns. *See* § 19-3-211, C.R.S. 2025; Dep't of Hum. Servs. Reg. 7.606, 12 Code Colo. Regs. 2509-7.

¶ 33    Mother argues that the caseworker's poor communication hindered the effectiveness of services provided to meet her basic needs, in effect holding her "back from being able to work on other needs and being successful in this case." Mother's life skills provider testified that what the Department was supposed to be helping mother with was a "source of confusion this entire time," and that the caseworker's failure to communicate a clear answer made it more difficult to determine what assistance mother needed. The juvenile court, however, also heard from mother's long-time domestic violence treatment provider, who opined that mother had "lots of options, choices, times" to complete her treatment plan. The provider furthered testified that mother "had the support" and that "[r]esources were available," but that she made excuses "that stopped that from happening." Finally, the provider testified that "ultimately, [mother]'s actions have led us to where we are today." We will not reweigh this evidence. *See A.J.L.*, 243 P.3d at 256. The juvenile court, as the trier of fact, is entrusted to weigh conflicting evidence and assess witness credibility. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence.");

14

*see also Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999) (recognizing "the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses" and "discourag[ing] an appellate court from second-guessing those judgments based on a cold record").

¶ 34 Because mother does not dispute that the Department made the appropriate referrals for services required under section 19-3-208, we conclude that the juvenile court did not err by finding that the Department satisfied its reasonable efforts obligation.

## IV. Fit Within a Reasonable Time

¶ 35 Father also contends that the juvenile court erred by finding that he could not become fit within a reasonable time. We are not convinced.

¶ 36 An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2). In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred

during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008). In determining unfitness, the court may also consider the statutorily prescribed factors, including the parent's past involvement with a department of human services or juvenile court, the parent's use of illegal substances, and whether a department provided reasonable efforts. § 19-3-604(2).

¶ 37    What constitutes a reasonable time is fact-specific and must be determined by considering the physical, mental, and emotional conditions and needs of the particular child. *S.Z.S.*, ¶ 25. When, as here, the child is under six years old at the time the petition is filed, the action is subject to the expedited permanency planning provisions, and the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2025.

¶ 38    The juvenile court found that father was unfit and unlikely to become fit within a reasonable time.  The court noted that the child was two years old and that "a reasonable period of time has passed."  The court further found that the child, who had "extraordinary needs," could not wait any longer for father to become fit.

¶ 39    Father claims that he made "consistent, significant changes during the course of the proceeding."  The record shows otherwise.  Father testified that he did not follow through with domestic violence treatment and was not participating in treatment for substance dependence or mental health.  The caseworker's supervisor, an expert in child protection and child welfare, opined that father demonstrated "minimal compliance" with the treatment plan and exhibited the same problems — substance dependence and domestic violence — that had necessitated Department involvement nearly three years earlier.

¶ 40    To the extent father claims that he could have become fit within a reasonable time with a different caseworker, we disagree.  The court found, with record support, that father's substance dependence — not any misconduct by the caseworker — prevented

him from engaging in treatment, progressing in family time, or obtaining stability. And the court properly noted that the child's siblings had been the subject of multiple dependency and neglect actions. *See* § 19-3-604(2)(i) (permitting the juvenile court to consider a parent's prior involvement with a department in determining unfitness).

¶ 41 We therefore discern no basis for reversal.

## V. Conclusion

¶ 42 The judgment is affirmed.

JUDGE GROVE and JUDGE SCHOCK concur.